**WOLF CREEK COLLIERIES,**
**Petitioner,**

v.

**Olga ROBINSON; and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 88–3438.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 16, 1989.

Decided April 21, 1989.

Ronald E. Gilbertson (argued), Kilcullen, Wilson & Kilcullen, Washington, D.C. for petitioner.

Leonard Stayton (argued), Inez, Ky., Paula Lincoln, Richard A. Seid (argued),

---

U.S. Dept. of Labor, Office of the Sol., Washington, D.C. for respondents.

Before KENNEDY and JONES, Circuit Judges; and SILER, Chief District Judge.[*]

KENNEDY, Circuit Judge.

Wolf Creek Collieries (Wolf Creek or Petitioner) seeks review of the Benefits Review Board's (Board's) order affirming an administrative law judge's (ALJ's) award of survivor benefits to Olga Robinson under Part C of the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* Wolf Creek contends that the Board erred in failing to hold that the remarriage of Robinson's widow *permanently* terminated her eligibility for black lung benefits under 30 U.S.C. § 902(e) and the implementing regulations. Alternatively, Petitioner argues that substantial evidence does not support the ALJ's invocation of the *irrebuttable* presumption of total disability pursuant to 30 U.S.C. § 921(c)(3) and 20 C.F.R. § 410.418. We find no merit to these arguments, and, accordingly, affirm the Board's order.

## I. Background

At the time of his death in March 1975, Hayes Robinson had worked for 17 years as a miner until he suffered a series of heart attacks over a two-month period; the fourth attack was fatal. His widow, respondent Olga Robinson, filed a claim for surviving spouse benefits in April 1975. The ALJ initially considered her claim under the provisions of 20 C.F.R. § 727.203. He found that although she was entitled to invoke the interim presumption of total disability under 20 C.F.R. § 727.203(a)(1) (over 10 years in coal mine employment and X-ray establishes pneumoconiosis), this presumption was rebutted under section 727.-203(b)(3) (total disability or death of miner did not arise out of coal mine employment).

The ALJ therefore denied benefits. Based on Board precedent, he summarily rejected Wolf Creek's alternative claim that Olga Robinson's remarriage following the death of Hayes Robinson permanently terminated her eligibility for survivor's benefits.

On the Director's motion for reconsideration, the ALJ granted benefits. He accepted the Director's argument that his initial decision failed to consider evidence in the record that Dr. Cole, a certified B reader,[1] had indicated on the Department of Labor's X-ray interpretation form that Robinson not only had small opacities (simple pneumoconiosis), the focus of the hearing, but also Category A large opacities (complicated pneumoconiosis). The ALJ found that the other evidence, while silent on complicated pneumoconiosis, indicated either simple pneumoconiosis, or posited tuberculosis without rejecting complicated pneumoconiosis as a possibility. The only other B reader was unable to evaluate the X-rays because his copy of the films was reduced and of poor quality, although he nevertheless indicated probable pneumoconiosis (simple). The ALJ concluded that the evidence was not contradictory, and in fact supported Dr. Cole's conclusion. He thus invoked the *irrebuttable* presumption of total disability under 30 U.S.C. § 921(c)(3) and 20 C.F.R. § 410.418.

The Board affirmed the ALJ's reconsidered decision as supported by substantial evidence, rational, and in accordance with law. The Board noted that the finding of complicated pneumoconiosis is a finding of fact, and that the ALJ "properly assigned more weight to the reading of Dr. Cole, a B-reader who reread the three 1975 x-rays as showing small irregular opacities, category 2/3t and large opacities, Category A." The Board further ruled that Olga Robinson's remarriage did not permanently bar her from entitlement to benefits. Under

---

[*] The Honorable Eugene E. Siler, Jr., Chief United States District Judge for the Eastern District of Kentucky and United States District Judge for the Western District of Kentucky, sitting by designation.

1. A "B reader" has successfully completed an examination conducted on behalf of the Depart- ment of Health and Human Services, and has a proven proficiency in reading X-rays in diagnosing pneumoconiosis. A B reader's diagnosis may be given greater weight by the ALJ. *See Lawson v. Secretary of Health & Human Servs.,* 688 F.2d 436 (6th Cir.1982).

current Board case law, a claimant is entitled to benefits if the intervening marriage has terminated. *See Luchino v. Director, OWCP,* 8 B.L.R. 1–453 (1986). The remarriage issue is one of first impression before this Court.

Wolf Creek appeals the Board's decision, contending that the remarriage of a miner's surviving spouse *permanently* terminates that spouse's entitlement to the miner's black lung benefits, and that the irrebuttable presumption of 20 C.F.R. § 410.418 was improperly invoked. We find that the plain language and legislative history of 30 U.S.C. § 902(e), which defines a "widow" as an individual who "is not married," rather than who "has not remarried," allows for resumption of eligibility for survivor's benefits when an intervening marriage is terminated. Although the implementing regulations are somewhat ambiguous, they are not inconsistent with the statutory language, and the Director's interpretation is consistent with the statute. The agency's interpretation is thus entitled to deference. We also reject Wolf Creek's contention that Dr. Cole's additional notation of tuberculosis on the X-ray form creates sufficient ambiguity as to the cause of the large opacities and that the finding of complicated pneumoconiosis is unfounded. Although the form is not a model of clarity, substantial evidence requires only that a reasonable mind could accept the conclusion that the notation indicates complicated pneumoconiosis.

## II. The Effect of Intervening Marriage on Eligibility

■ Wolf Creek argues that the remarriage of a miner's surviving spouse *permanently* terminates the widow's entitlement to black lung benefits. In this case, Olga Robinson was married to Hayes Robinson from January 1951 until his death in March 1975. She subsequently married Gay Pauley in November 1975, but divorced him in March 1979, and has not remarried since the divorce. Wolf Creek asserts that under the statute and regulations, Robinson's widow is only eligible for benefits for the months between March and November 1975.

### A. Statutory Language

" '[T]he starting point in every case involving construction of a statute is the language itself.' " *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed. 2d 80 (1981) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). In this case, the definition of "widow" in 30 U.S.C. § 902(e) is as follows:

The term "widow" includes the wife living with or dependent for support on the miner at the time of his death ... *who is not married.*

(emphasis added.) Petitioner makes a "plain meaning" argument that because no provision is made for "suspension" of eligibility, the Act must mandate a permanent termination of eligibility.

We cannot accept the argument that because the language neither prohibits nor permits resumption of eligibility, it must prohibit resumption. As the Director points out, the language defines a widow's marital status *in praesanti;* thus, its plain meaning is that a widow is eligible as long as she *currently* is not married.

### B. Legislative History

Although statutory language is the best evidence of Congressional intent, "[t]he legislative history of an act must be examined in order to ascertain Congressional intent, even though the statutory language appears to be plain." *United States v. Stauffer Chemical Co.,* 684 F.2d 1174, 1183 (6th Cir.1982). The original Black Lung Act of 1969 defined the term "widow" as a "wife living with or dependent for support on the decedent at the time of his death ... *who has not remarried.*" Pub. L. 91–173, § 402(e), 63 Stat. 742, 793 (1969) (emphasis added); H.Rep. No. 563, 91st Cong., 1st Sess., *reprinted in* 1969 U.S. Code Cong. & Admin.News 2503, 2543. The 1969 Act's plain language permanently excluded from coverage a widow who had remarried. In the 1972 amendments to the Act, Congress redefined the term "widow"

in 30 U.S.C. § 902(e) "to conform to the Social Security Act definition." S.Rep. No. 743, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 2305, 2332. The Social Security Act (SSA) defines "widow" as an individual who "is not married." 42 U.S.C. § 402(e)(1)(A). At this point, the history of the SSA definition becomes relevant.

In 1965, Congress amended the SSA, replacing the phrase "has not remarried," with the phrase "is not married." Pub.L. 89–97, § 308(b)(1), 79 Stat. 286, 376 (1965). The legislative history of the SSA indicates that Congress intended that a person who was not married at the age of eligibility was to retain "whatever rights to benefits she has ever had, regardless of intervening marriages which have ended in death, divorce, or annulment." S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2048. *See also id.* at 1957–58. Petitioner argues that the SSA's legislative history is irrelevant to determining congressional intent with respect to the Black Lung Act. We cannot agree. Congress expressly "conformed" the SSA definition to the Black Lung Act. Congress was presumably aware of its own expressed intent with respect to the SSA definition when using it to conform the Black Lung Act. Moreover, there was no other reason for changing the former statutory language other than to allow a resumption of eligibility. We cannot accept Petitioner's suggestion that Congress "conformed" the language for its own sake. The legislative history makes it clear that Congress intended 30 U.S.C. § 902(e) to be construed in the same manner as the SSA definition, allowing a resumption in eligibility.

## C. Regulatory Language

Petitioner also asserts that the plain meaning of the implementing regulations prohibits a resumption of eligibility after remarriage. Although we agree that the regulations are somewhat ambiguous, this ambiguity does not prevent the resumption of eligibility for two reasons. First, although the regulations may be ambiguous, they are not plainly inconsistent with the statutory language. Even if they were inconsistent, the statutory language would prevail over inconsistent regulatory language. Second, the Director interprets its regulations consistent with our statutory construction of 30 U.S.C. § 902(e). That interpretation is entitled to deference.

We begin our examination of the implementing regulations by noting that the "is not married" language of 30 U.S.C. § 902(e) is generally carried over by the Department of Labor into the applicable regulations. 20 C.F.R. § 725.212(a)(1) states:

§ 725.212 **Condition of entitlement; surviving spouse or surviving divorced spouse.**

(a) An individual who is the surviving spouse or surviving divorced spouse of a miner is eligible for benefits if such individual:

(1) *Is not married;*

(2) Was dependent on the miner at the pertinent time; and

(3) The deceased miner either:

(i) Was receiving benefits ...; or

(ii) Is determined as a result of a claim filed prior to January 1, 1982, to have been totally disabled due to pneumoconiosis at the time of death or to have died due to pneumoconiosis....

(Emphasis added.)

Petitioner argues that although Olga Robinson satisfied the requirements of section 725.212 at Hayes Robinson's death, her entitlement was permanently terminated when she remarried. Petitioner cites 20 C.F.R. § 725.213, which states:

§ 725.213 **Duration of entitlement; surviving spouse or surviving divorced spouse.**

(a) An individual is entitled to benefits as a surviving spouse, or as a surviving divorced spouse, for each month beginning with the first month in which all of the conditions of entitlement prescribed in § 725.212 are satisfied.

(b) The last month for which such individual is entitled to such benefits is the month before the month in which either of the following events first occurs:

(1) *The surviving spouse or surviving divorced spouse marries;* or

(2) The surviving spouse or surviving divorced spouse dies; or

(3) Where the individual qualifies as the surviving spouse of a miner under § 725.204(d)....

(Emphasis added.) Petitioner also cites section 722.112, which provides:

**§ 722.112 Widow, surviving divorced wife.**

(a) An individual shall be entitled to claim for and receive benefits as the widow or surviving divorced wife of a deceased miner if:

(1) Such individual *is not married* and is the "widow" of such miner as defined in section 420(e) of the Act; and

(2) Such miner's death or total disability at time of death was due to pneumoconiosis (which, for purposes of the Act, includes any death of a miner who was totally disabled by pneumoconiosis or was receiving benefits for such disability at the time of his death).

(b) A widow or surviving divorced wife shall be entitled to receive benefits *until she remarries*, or dies, or her entitlement otherwise ceases.

(Emphasis added.) Petitioner submits that the plain language of the above provisions establishes that a "widow" is only entitled to benefits until remarriage and thereafter eligibility is permanently terminated.

The ambiguity apparent above is that under section 722.213 the duration of entitlement terminates when the surviving spouse marries and section 722.112 retains the proviso that a widow is only "entitled to receive benefits until she remarries." The Director, however, interprets sections 725.213 and 722.112 as circumscribing only the *duration* of entitlement, and not the *conditions* of entitlement, which are set out in section 725.212. Under this interpretation, a widow's eligibility ceases upon remarriage under sections 722.213 and 722.112, but section 722.212 is then applicable to determine resumption of eligibility upon termination of that remarriage.

It is not necessary for this Court to determine whether the Director's or Petition-er's interpretation is more reasonable. First, to the extent that the regulations are inconsistent with the statute, the statute must prevail. *See Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981) (The Court "must reject administrative constructions of the statute ... that are inconsistent with the statutory mandate"); *Davis v. Secretary of Health & Human Servs.,* 867 F.2d 336, 338 (6th Cir.1989) (quoting *Federal Election Comm'n,* 454 U.S. at 32, 102 S.Ct. at 42). Second, " '[t]he question for this court ... is not whose interpretation of the statute we prefer,' but whether we are persuaded that the [agency's] interpretation is reasonable and consistent with the regulation's language." *Id.* at 339 (quoting *Whiteside v. Secretary of Health & Human Servs.,* 834 F.2d 1289, 1292 (6th Cir.1987)).

While the regulations may be ambiguous, we do not find them to be inconsistent with the statutory language. The administrative agency itself interprets its regulations consistent with the "is not married" language of the statute. As this Court has recently noted, " 'The interpretation put on the statute by the agency charged with administering it is entitled to deference....' " *Id.* at 338 (quoting *Federal Election Comm'n,* 454 U.S. at 31–32, 102 S.Ct. at 42). *See also Red Lion Broadcasting Co. v. Federal Communications Comm'n,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969) (the court will follow "the construction of a statute by those charged with its execution ... unless there are compelling indications that it is wrong"). Because the Director's interpretation of its regulations is reasonable and consistent with the statute, the agency's interpretation is entitled to deference.

**D. Benefits Review Board Precedent**

Although the Benefits Review Board's interpretation of the eligibility issue is not entitled to special deference by this Court, *see Director, OWCP v. Hill,* 831 F.2d 635, 637–38 (6th Cir.1987), we agree with the current Board majority's conclusion that eligibility resumes upon termination of the

intervening remarriage. *See Luchino v. Director, OWCP,* 8 B.L.R. 1–453 (1986). The Board had held in an earlier case that an intervening marriage permanently barred eligibility, based on a cursory analysis of the regulatory language, in *Robinson v. Director, OWCP,* 7 B.L.R. 1–579 (1982) (unrelated to the present case). In 1984, the Board overruled *Robinson* based on a statutory construction similar to our own. *See Kuhn v. Director, OWCP,* 7 B.L.R. 1–268 (1984). Because the Board has been closely divided in *Kuhn* and all subsequent cases heard by the Board, we wish to address the dissenters' primary concern that while the majority's analysis is "technically correct," it may lead to "absurd" results contrary to the broader purposes of the Act.

In *Luchino, supra,* the dissent points out that the Social Security Act is "firmly rooted in welfare concepts," while the "Black Lung Act [is] a compensation statute." The facts of *Luchino* illustrate the potentially absurd results feared by the dissent. In that case, the widow's remarriage lasted almost 30 years. In *Kuhn,* the remarriage lasted 38 years. Clearly, the Black Lung Act's purpose of providing benefits to disabled miners and their dependents is extremely attenuated in these instances; the widows in those cases had not been dependent on their deceased miner husbands for a very long time. What the dissent does not address are the equally unfair results when a widow's remarriage has a very short duration. If a widow's intervening marriage were to last one day after a 30 year marriage to the miner, the widow would clearly be a dependent, and

denial of eligibility would be unfair. Likewise, Olga Robinson's intervening marriage lasted less than four years, compared to her marriage with Hayes Robinson which lasted 24 years. Her dependency on Hayes Robinson is not remote.

The underlying problem is that Congress has not defined the term "widow" with sufficient precision to meet the Act's overarching purposes in all cases. We must therefore accept the plain language of the statute and its legislative history at face value: a "widow" is an individual who "is not married," and the definition conforms to the SSA's definition, by which Congress intended to include individuals whose intervening marriage has terminated. It is not the Court's role to address perceived inadequacies in the Act. "What the [petitioner] asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926).

## III. Irrebuttable Presumption of Total Disability due to Pneumoconiosis

■ Wolf Creek's second contention is that the ALJ erred in invoking the irrebuttable presumption of 30 U.S.C. § 921(c)(3) and 20 C.F.R. § 410.418. In his initial decision, the ALJ evaluated the claim under 20 C.F.R. § 727.[2] He found that the *rebuttable* interim presumption was invoked under 20 C.F.R. § 727.203(a)(1) based both on Wolf Creek's concession of the presence of pneumoconiosis,[3] and on X-ray evidence by

---

2. The pertinent text of § 727.203 is as follows:

    (a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

    (1) A chest roentgenogram (X-ray), ... establishes the existence of pneumoconiosis....

    (b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The pre-

sumption in paragraph (a) of this section shall be rebutted if:....

    (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment....

3. Although Wolf Creek argues that complicated pneumoconiosis is a "new" issue which required notice to the parties and another hearing or remand to the deputy commissioner, the deputy commissioner's list included pneumoconiosis as an employer-contested issue, without distinguishing between simple and complicated pneumoconiosis. Even though Wolf Creek conceded

Drs. Rivera, White, Wilson, Cole, and Felson. In reporting on Dr. Cole's April 1979 rereading of three X-rays dated January and February 1975 (which occurred long before the ALJ's hearing), the ALJ noted type t 2/3 small opacities (simple pneumoconiosis) and tuberculosis. He failed to note that Dr. Cole had also marked on the Department of Labor X-ray interpretation form that the miner also had Category A large opacities (complicated pneumoconiosis). None of the parties dispute that the *rebuttable* presumption was established under section 727.203(a)(1).

The ALJ relied on the analyses of Dr. Cole's report by Drs. Anderson and O'Neill, neither of whom mentioned the large opacities. In addition, Drs. White, Cole, and O'Neill also noted tuberculosis. Dr. O'Neill noted that tuberculosis can mimic simple pneumoconiosis. The ALJ accepted Anderson's and O'Neill's analyses that Robinson's death "was caused by severe atherosclerotic coronary vascular disease which is not causally related to the inhalation of coal mine dust or to pneumoconiosis." Robinson had had four heart attacks in the two months leading up to his death. Thus, the ALJ found that the presumption of disability was rebutted for lack of causation under 20 C.F.R. § 727.203(b)(3).

The Director filed a motion for reconsideration on the basis that Dr. Cole's reading of the X-rays showed not only type t 2/3 small opacities (simple pneumoconiosis), but also Category A large opacities (complicated pneumoconiosis). The ALJ acknowledged that Dr. Cole had indeed recorded "A Size" large opacities on the Department of Labor's X-ray interpretation form. Under 20 C.F.R. § 410.418,

There is an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis, or that a miner was totally disabled due to pneumoconiosis at the time of his death, if he is suffering or suffered from a chronic dust disease of the lung which:

(a) When diagnosed by chest roentgenogram (X-ray), yields one or more large opacities (greater than 1 centimeter in diameter) and would be classified in Category A, B, or C (that is, as "complicated pneumoconiosis").....

The ALJ found that the other evidence did not contradict Dr. Cole's readings and actually tended to support his findings:

The ... x-ray evidence supports a finding of pneumoconiosis. Dr. Rivera found diffuse nodular disease; Dr. White found extensive nodular pulmonary disease; Dr. Wilson found small nodules scattered throughout the lung field; and Dr. Felson [the only other B reader] found that [although his copy of the x-rays were reduced in size, of poor quality, and basically unreadable,] the x-rays appeared to show pneumoconiosis. Though Dr. Wilson says that changes strongly suggest tuberculosis, he does not say that the x-ray shows tuberculosis and not pneumoconiosis. Even though the x-ray readings, other than Dr. Cole's readings, are not classified in accordance with the I.L.O. classifications, I find that the weight of the x-ray evidence does not contradict Dr. Cole's readings, and, in fact, tends to support his findings.

Accordingly, the ALJ awarded benefits based on the irrebuttable presumption.

The Board upheld the ALJ's decision, holding that his findings were supported by substantial evidence, were rational, and in accordance with applicable law. The Board noted that the determination of complicated pneumoconiosis is a finding of fact, and that the ALJ "properly assigned more weight to the reading of Dr. Cole, a B-reader who reread the three 1975 x-rays as showing small irregular opacities, category 2/3t and large opacities, Category A." *See Moseley v. Peabody Coal Co.*, 769 F.2d 357, 360 (6th Cir.1985) (ALJ determines credibility and weight accorded to evidence); *Lawson*, note 1 *supra*.

We must uphold the ALJ's factual findings if they are supported by substantial

simple pneumoconiosis to the ALJ, the issue of complicated pneumoconiosis, although not thoroughly developed, was properly before the ALJ.

This Court's task is thus limited to determining whether substantial evidence supports the ALJ's factual finding of complicated pneumoconiosis.

evidence. *See Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 488 (6th Cir.1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ramey,* 755 F.2d at 488 (quoting *Perales*). In the present case, a reasonable mind could accept Dr. Cole's "Category A large opacity" notation on the Department of Labor form, taken in conjunction with the additional reports showing that Robinson had pneumoconiosis and tuberculosis, as sufficient evidence that the large opacities were caused by complicated pneumoconiosis.

Wolf Creek first contends that Dr. Cole's additional notation of tuberculosis and "honeycomb lung" on the X-ray form creates an ambiguity as to whether those diseases might have caused the Category A large opacities rather than complicated pneumoconiosis. Although the X-ray form is not a model of clarity, we do not find the form to be so ambiguous that a reasonable mind could not accept the ALJ's conclusion that the Category A opacities were in fact caused by complicated pneumoconiosis. The form was designed by the Department of Labor specifically to be used in determining eligibility based on the presence, or lack thereof, of pneumoconiosis. It indicates simple pneumoconiosis if there are small opacities and complicated pneumoconiosis if there are large opacities. *See* 20 C.F.R. § 410.418(a). If we were to accept petitioner's "ambiguity" argument, we would also have to reject a finding of simple pneumoconiosis if any other diseases were noted on the form; it would thus be essentially useless.

A related causation argument made by Wolf Creek is that section 410.418(a)'s *"chronic* dust disease of the lung" requirement is not met. They assert that only *simple* pneumoconiosis was established. As the legislative history to the 1972 Black Lung Act amendments makes clear, however, *both* simple and complicated pneumoconiosis are considered chronic dust diseases. *See* S.Rep. No. 743, 92d Cong., 2d Sess., *reprinted in* 1972 Code Cong. & Ad.News 2305, 2309–10. Because petitioner has conceded simple pneumoconiosis, it cannot now argue that the "chronic dust disease" requirement of section 410.418(a) has not been met.

In sum, substantial evidence supports the ALJ's conclusion that Dr. Cole's large opacities notation established complicated pneumoconiosis. As the ALJ and Board explained, a B reader's interpretation is entitled to greater weight, and the only other B reader, Dr. Felson, was unable to make any conclusions as to the type of pneumoconiosis because the film he read was reduced and of poor quality. The ALJ also took into account the other reports showing evidence of both pneumoconiosis and tuberculosis. While these additional reports did not show *complicated* pneumoconiosis, we agree with the ALJ that they do "not contradict Dr. Cole's readings, and, in fact, tend [ ] to support his findings." The ALJ's factual finding of complicated pneumoconiosis is supported by substantial evidence and is sufficient to invoke the irrebuttable presumption.

### IV. Conclusion

For the reasons discussed above, the decision of the Benefits Review Board is AFFIRMED.