930 F.2d 262
 59 USLW 2625
 COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE
and Kathryn Horanic
v.
Mark J. MARKIEWICZ,
Commonwealth of Pennsylvania, Department of Public Welfare,
Appellant/Cross Appellee No. 90-3327,
Mark J. Markiewicz, Appellee/Cross Appellant No. 90-3373.
 Nos. 90-3327, 90-3373.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 13, 1990.
Decided April 3, 1991.
 
 Jason W. Manne (argued), Asst. Counsel, Office of Legal Counsel Dept. of Public Welfare, Pittsburgh, Pa., for appellant/cross appellee.
 Zanita A. Zacks-Gabriel (argued), Erie, Pa., for appellee/cross appellant.
 Before STAPLETON, HUTCHINSON, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 This case presents a question of first impression. Section 654(4)(B) of Title 42 of the United States Code provides limited access to the federal courts for state agencies seeking to obtain or enforce child support orders in the discharge of their obligations under the Aid to Families with Dependent Children Program ("AFDC"). "[W]hen [reciprocal] arrangements and other means have proven ineffective, the State may utilize the Federal courts to obtain or enforce court orders for support; ...." 42 U.S.C. Sec. 654(4)(B). We must decide whether the Pennsylvania Department of Public Welfare ("DPW") has demonstrated that "other means have proven ineffective" in this case so as to establish federal court jurisdiction. The district court dismissed the case for lack of subject-matter jurisdiction and we will affirm.
 
 I.
 
 2
 Kathryn Horanic ("Horanic") is a resident of Pennsylvania. On December 31, 1977, in the state of Pennsylvania, she and Mark Markiewicz ("Markiewicz") engaged in sexual relations. Markiewicz, a resident of New Mexico, was visiting family and friends in Pennsylvania at the time. Approximately nine months later, Horanic gave birth to her son, Gregory. Horanic alleges that Markiewicz is her son's father.
 
 
 3
 Subchapter IV-A of the Social Security Act established AFDC. 42 U.S.C. Sec. 601. AFDC provides funds to state programs giving financial assistance to needy families with dependent children. Any state desiring AFDC money must submit a plan to the Secretary of Health and Human Services ("Secretary") setting forth the manner in which it will administer the funds. 42 U.S.C. Sec. 601. 42 U.S.C. Sec. 602 lists the requisite features of qualifying plans. For example, the plan must provide that each individual applying for aid will assign all support rights to the state. 42 U.S.C. Sec. 602(a)(26)(A).
 
 
 4
 The state, in turn, must enforce those rights. Title IV-D of the Social Security Act ("Title IV-D") established the Child Support Enforcement Program under which each participating state must create a "IV-D agency" to administer the state's program. The regulations promulgated thereunder set forth the minimum staffing and operational requirements of IV-D agencies. See 45 C.F.R. Sec. 303. One duty of a IV-D agency is to attempt to establish the paternity of any child recipient born out of wedlock and to obtain support payments from the child's father.
 
 
 5
 Ms. Horanic receives AFDC funds. Horanic and Erie County authorities commenced an action seeking child support from Markiewicz in the Pennsylvania Court of Common Pleas in 1979. When it was determined that Markiewicz was residing in New Mexico, the court ordered that the relevant documents be transmitted to New Mexico pursuant to the provisions of the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA"). Both New Mexico and Pennsylvania have adopted RURESA. 23 Pa.Cons.Stat. Secs. 4501-4540; N.M.Stat.Ann. Secs. 40-6-1 to -41.
 
 
 6
 RURESA seeks to "improve and extend by reciprocal legislation the enforcement of duties of support." RURESA Sec. 1, 9B U.L.A. 394 (1968). The prefatory note explains that the
 
 
 7
 Act itself creates no duties of family support but leaves this to the legislatures of the several states. The Act is concerned solely with the enforcement of the already existing duties when the person to whom a duty is owed is in one state and the person owing the duty is in another state.
 
 
 8
 Section 18 of RURESA requires the court in the responding state to docket the case and notify the prosecuting attorney of the action. The prosecuting attorney must prosecute the case diligently. RURESA Sec. 18, 9B U.L.A. 461 (1968).
 
 
 9
 New Mexico authorities served the complaint on Markiewicz and assigned an assistant attorney general to handle the case. Markiewicz's attorney filed a motion to dismiss and an answer denying paternity. The New Mexico state court set a trial date.
 
 
 10
 It is not clear whether the court held a full-scale bench trial. The court's decision was never appealed and the transcript was destroyed when the time for appeal expired. It is clear, however, that on February 7, 1980, New Mexico presented to the court the papers that the Erie County Domestic Relations Office had provided, and Markiewicz testified on his own behalf. At the conclusion of the session, the court dismissed the case with prejudice.
 
 
 11
 When notified, the Erie County Reciprocal Support Office inquired as to the reasons for the dismissal. It learned that a paternity affidavit had been omitted from the papers transmitted to New Mexico. Erie County sent the paternity affidavit and asked the assistant attorney general to reopen the case. He did not. Erie County did not pursue the matter further and the order of the New Mexico court was never appealed.
 
 
 12
 Five years later, Erie County authorities brought a long arm action in the Erie County Court of Common Pleas. At that time, the applicable statute of limitations for support actions in Pennsylvania was six years. That statute had run and the court dismissed the action on statute of limitations grounds.
 
 
 13
 In 1988, the Supreme Court declared the six-year statute of limitations unconstitutional. Clark v. Jeter, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). The Pennsylvania legislature responded by enacting an eighteen-year statute of limitations for paternity actions. 23 Pa.Cons.Stat. Sec. 4343(b). The statute specifically permits parties to refile actions dismissed as a result of the prior limitations period. However, neither DPW nor Erie County officials have refiled Horanic's action in the Court of Common Pleas.
 
 
 14
 No further action was taken in Horanic's case until 1990. By then, the responsibility for the matter had been transferred to the DPW's office of legal counsel for special handling. DPW filed the present action in the district court for the Western District of Pennsylvania.
 
 
 15
 DPW relies on 42 U.S.C. Sec. 654(4)(B) to establish the district court's subject-matter jurisdiction. That section permits states seeking support orders to bring an action in federal court when reciprocal "arrangements and other means have proven ineffective." The district court concluded that DPW did not demonstrate that "other means have proven ineffective." Specifically, it noted that the change in Pennsylvania's statute of limitations removed the bar to proceeding with a long arm action in the Erie County Court of Common Pleas.
 
 
 16
 DPW appeals the final order of the district court dismissing the action for lack of subject-matter jurisdiction. This Court has jurisdiction over DPW's appeal. 28 U.S.C. Sec. 1291. No jurisdictional facts are in dispute. Accordingly, we exercise plenary review of the district court's order dismissing the action for lack of subject-matter jurisdiction. See York Bank and Trust Co. v. Federal Savings and Loan Ins. Corp., 851 F.2d 637 (3d Cir.1988).
 
 II.
 A. The "Other Means" Requirement
 
 17
 Congress enacted a statutory scheme that contemplates the use of RURESA or similar arrangements as the primary vehicle for obtaining support orders. Thus, IV-D agencies must pursue such matters "utilizing any reciprocal arrangements adopted with other states" before a federal court can take jurisdiction over a support action. 42 U.S.C. Sec. 654(4)(B). In the present case, Pennsylvania officials utilized RURESA in the initial efforts to obtain a support order.
 
 
 18
 In addition to reciprocal arrangements, the statute directs states to pursue "other means." IV-D agencies seeking support orders must take steps in addition to those available through arrangements like RURESA before coming to federal court. At a minimum, the statute requires states to pursue paternity and support actions through an arrangement like RURESA, as well as through a long arm proceeding in its own state courts.
 
 B. The "Proven Ineffective" Requirement
 
 19
 In the present case, Pennsylvania authorities have pursued a support order through RURESA as well as a long arm proceeding in the Pennsylvania state courts. Neither effort yielded an order of support. However, to establish federal jurisdiction, an unsuccessful IV-D agency must demonstrate that the use of RURESA and its own state courts have "proven ineffective" within the meaning of Sec. 654(4)(B).
 
 
 20
 We believe that the statutory language requires some showing of due diligence on the part of the IV-D agency seeking access to the federal courts. When Congress limited federal court jurisdiction to those cases where reciprocal "arrangements and other means have proven ineffective," it limited access to those cases where the prosecuting IV-D agency has diligently employed available nonfederal procedures and those procedures have proven unsuccessful.
 
 
 21
 DPW acknowledges that at the time it instituted this action, it could have proceeded in the Pennsylvania Court of Common Pleas and could have secured in personam jurisdiction over Markiewicz there with service under Pennsylvania's long arm statute. Such an action was dismissed five years ago solely on the basis of an expired statute of limitations. The Supreme Court has declared that statute unconstitutional, and the Pennsylvania legislature has enacted legislation that permits parties to refile action dismissed as a result of the prior statute of limitations. We hold that such an action constitutes "other means" for the purposes of the jurisdictional requirements of Sec. 654. Because DPW has not exhausted this option, it cannot demonstrate that "other means have proven ineffective" within the meaning of the statute.[1]
 
 
 22
 DPW makes much of the difference between the language of Sec. 654 and that of Sec. 652. Section 652(a)(8) provides that the Secretary should certify an action seeking to enforce a support order when "utilization of the federal courts is the only reasonable method of enforcing such order...." Section 660 provides that the federal district courts "shall have jurisdiction" over matters the Secretary certifies under Sec. 652(a)(8). Because of the difference between these sections, DPW maintains that the jurisdictional requirements of Sec. 654 are "more relaxed" and we should apply them "liberally." In particular, we understand it to suggest that the absence of Sec. 652's "the only reasonable method" language means that a plaintiff can gain access to the federal courts under Sec. 654 without exhausting all available state remedies.
 
 
 23
 In support of its position, DPW argues that one "obvious" reason Congress intended to provide a "more relaxed standard" in Sec. 654(4)(B) is that "there is no danger of a flood of child support litigation" coming into federal courts because Sec. 654(4)(B) can be invoked only by IV-D agencies in AFDC cases. "Unlike Secs. 652(a)(8) and 660, [Sec. 654(b)(4)(B) ] cannot be used on behalf of private litigants."
 
 
 24
 DPW misreads Sec. 652(a)(8). Section 652 provides that the Secretary will establish a specific organizational unit with responsibility for coordinating, monitoring and providing assistance to states seeking to satisfy the requirements of their AFDC plans. One of the responsibilities of that unit is to "receive applications from States for permission to utilize the courts of the United States to enforce court orders for support against absent parents...." Sec. 652(a)(8) (emphasis added). 45 C.F.R. Sec. 303.73 sets forth the factors a IV-D agency must establish when seeking the Secretary's permission to utilize the federal courts for this purpose. Thus, not only is Sec. 652(a)(8) similarly limited to states seeking to use the federal courts, it is also meant to apply to AFDC cases.
 
 
 25
 DPW likens itself to an executive branch agency interpreting the statute it is charged to administer. DPW argues that Congress intended for courts to give deference to a IV-D agency's determination that "other means have proven ineffective." See Levine v. Fairleigh Dickinson University, 646 F.2d 825, 831 (3d Cir.1981) ("[w]hen presented with a problem of statutory construction, we must give deference to the interpretation given the statute by the officers or agency charged with its administration"). DPW's argument is unavailing. The Secretary of Health and Human Services is charged with the administration of AFDC, not the states.
 
 
 26
 The differences in statutory language relied upon by DPW do nothing to obviate the showing DPW must make in order for it to proceed under Sec. 654(4)(B). Like any other party seeking to invoke the jurisdiction of the federal court, DPW has the burden of proving that federal court jurisdiction is present. See Schultz v. Cally, 528 F.2d 470, 473 (3d Cir.1975). In this case, DPW is unable to do so because an avenue of effective relief remains open to it in the Court of Common Pleas. It is unnecessary for us to consider here whether exhaustion of all state remedies is a prerequisite to jurisdiction under Sec. 654. Where, as here, a state remedy is readily available and that remedy appears comparable to the federal one, we are unpersuaded that Congress intended to permit preemption of the state process.
 
 
 27
 If DPW obtains a valid order from the Pennsylvania courts and New Mexico officials will not enforce that order as DPW apparently fears may happen, DPW may then seek the assistance of the federal courts. In such an event, DPW could attempt to proceed under either Sec. 654(4)(B) or Secs. 652(a)(8) and 660.
 
 C. The District Court's Opinion
 
 28
 In its opinion dismissing DPW's action, the district court ruled that it had personal jurisdiction over Markiewicz and that the dismissal of the New Mexico proceeding had no res judicata effect on DPW's action. It was only after making those determinations that the court considered the question of subject-matter jurisdiction.
 
 
 29
 We believe the district court erred in addressing the res judicata and personal jurisdiction issues because they were not essential to the district court's conclusion that it lacked subject-matter jurisdiction. "The initial inquiry in any suit filed in federal court must be whether the federal court possesses subject-matter jurisdiction." Rice v. Rice Foundation, 610 F.2d 471, 474 (7th Cir.1979). See also Leroy v. Great Western United Corp., 443 U.S. 173, 180, 99 S.Ct. 2710, 2714-15, 61 L.Ed.2d 464 (1979) (subject-matter jurisdiction is "fundamentally preliminary" issue). Because of the district court's lack of subject matter jurisdiction, these other aspects of the court's memorandum decision will have no collateral consequences, and we decline to address them.
 
 III.
 
 30
 The availability of a long arm proceeding in the Pennsylvania Court of Common Pleas precludes DPW from demonstrating that other means of obtaining a support order "have proven ineffective." The district court correctly found that it lacked subject-matter jurisdiction and properly dismissed the complaint. We will affirm the order of the district court.
 
 
 
 [1]
 We need not reach the question of whether the RURESA arrangements have proven ineffective in this matter. We note, however, that no appeal was ever taken from the New Mexico dismissal. We note further that there is no evidence that New Mexico officials acted improperly in their handling of this action