**MISSISSIPPI POWER & LIGHT COMPANY, Plaintiff,**

v.

**LOCAL UNION NOS. 605 & 985, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Defendants.**

Civil Action No. 3:94–CV–160WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 26, 1996.

Steven J. Allen, Paul O. Miller, III, Phelps Dunbar, Jackson, MS, for Mississippi Power & Light Company.

Steven Mark Wann, Maxey, Wann & Begley, Jackson, MS, for Local Union Nos. 605 & 985, International Brotherhood of Electrical Workers, AFL–CIO.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Both parties have submitted dispositive motions to the court. Plaintiff has submitted its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a),[1] while the defendants have filed their cross-motion for summary judgment pursuant to Rule 56(b),[2] Federal Rules of Civil Procedure. Here, pursuant to plaintiff's quest for a declaratory judgment under Title 28 U.S.C. § 2201,[3] this lawsuit focuses upon a provision of the collective bargaining agreement between plaintiff Mississippi Power & Light Company (MP & L), an employer, and the defendant labor unions. The provision at issue is paragraph 58(d) of the Memorandum of Agreement between the parties which allows certain disabled employees of plaintiff to resist any efforts by plaintiff to transfer them to new work locations if these employees are between the ages of 60 and 65 years

1. Rule 56(a) of the Federal Rules of Civil Procedure provides:

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

2. Rule 56(b) of the Federal Rules of Civil Procedure provides:

(b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

3. Title 28 U.S.C. § 2201 provides:

(a) In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the pleading, may declare the rights and other legal relations of any interested, party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

and have attained 30 years of service with plaintiff. Plaintiff says the provision is unenforceable because the age requirement renders it facially violative of the Age Discrimination in Employment Act of 1967 (ADEA), Title 29 U.S.C. § 623,[4] *et seq.* The defendant labor unions acknowledge that age is a vital part of the provision's benefit, but maintain that paragraph 58(d) constitutes part of a bona fide seniority system which falls outside the strictures of the ADEA. In addition, say defendants, the provision does not violate the ADEA because its purpose has been and is to counter the effects of past discriminatory practices by MP & L.

Having heard the various arguments of the parties and having analyzed them under the jurisprudence of the ADEA, this court is persuaded by the argument of MP & L and thus holds that paragraph 58(d) violates the ADEA and is thereby unenforceable.

## I. *PARTIES*

The plaintiff, MP & L, is a corporation organized and licensed to do business under the laws of the State of Mississippi. Its principal place of business is at 308 East Pearl Street, Jackson, Mississippi. It is engaged in an industry affecting interstate commerce and is an employer as defined in Title 29 U.S.C. § 152(2).[5]

The defendants are labor organizations, as defined at Title 29 U.S.C. § 152(5),[6] which represent employees in an industry affecting interstate commerce.

## II. *JURISDICTION*

This court has jurisdiction of this matter pursuant to Title 28 U.S.C. § 1331[7] as this matter involves a federal question which arises under § 301 of the Labor Management Relations Act ("LMRA"). Title 28 U.S.C. § 2201[8] bestows authority on this court to declare rights and other legal relations. *See West Point–Pepperell, Inc. v. Textile Workers Union of America,* 559 F.2d 304, 306 (5th Cir.1977) (stating that § 301 of the LMRA gives a district court jurisdiction over suits for contract violations between employers and labor organizations. This jurisdiction extends to actions for declaratory judgment respecting rights and duties in collective bar-

---

**4.** Title 29 U.S.C. § 623(a)(1) provides that:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

. . .

This prohibition against age-based discrimination also applies to unions as is stated below in Title 29 U.S.C. § 623(c)(2):

It shall be unlawful for a labor organization—

(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's age; . . .

**5.** Title 29 U.S.C. § 152(2) provides:

(2) The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any state or political subdivision thereof, or any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

**6.** Title 29 U.S.C. § 152(5) provides:

(5) The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

**7.** Title 28 U.S.C. § 1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

**8.** Title 28 U.S.C. § 2201 provides:

(a) In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

gaining agreements). Moreover, Title 29 U.S.C. § 185(a)[9] allows this court to hear disputes between employers and labor organizations arising out of collective bargaining agreements. An actual controversy exists here because plaintiff denied the defendants' grievance which requested plaintiff to comply with paragraph 58(d) of the Memorandum of Agreement relative to the efforts by one of the union members to enforce his rights under the collective bargaining agreement. *See Texas v. West Publishing Company,* 882 F.2d 171, 175 (5th Cir.1989) (stating that "an actual controversy is one where a 'substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests,'" (quoting *Middle South Energy v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986))).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where the movant has demonstrated that there exists no genuine issue of material fact and the movant is entitled to a judgment of law. *Daly v. Sprague,* 675 F.2d 716 (5th Cir.1982), *cert. denied,* 460 U.S. 1047, 103 S.Ct. 1448, 75 L.Ed.2d 802 (1983). In assessing whether the movant has met the burden of proof, the court will view all the facts and the evidence in the light most favorable to the non-movant. *Federal Deposit Insurance Corp. v. Dawson,* 4 F.3d 1303 (5th Cir.1993). If after this assessment the court finds that there are material factual disputes, then summary judgment is not appropriate. *Id.* On the other hand, if the court finds that in light of the record taken as a whole a rational trier of fact could not find for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. *Sims v. Monumental General Insurance,* 960 F.2d 478, 479–80 (5th Cir.1992); *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### IV. DISCUSSION

The issue before this court is whether paragraph 58(d) of the Memorandum of Agreement violates the ADEA. Paragraph 58(d) provides:

58. When an employee becomes physically unable to perform the duties of his classification due to a cause other than his own gross misconduct or injury sustained while working in employment outside the Company, the Company will make reasonable effort to assign him to another job, if available, which he is qualified and physically able to perform, and in such cases the advertising and seniority provisions of this contract shall not be applicable. It is understood that there will be no requirements that (sic) on the company to add a job or to place the employee in a job he is unable to perform.

d. If an employee between the ages of 60 and 65 who has (30) years of service with the Company becomes physically unable to perform the duties of his classification (as determined by competent medical authority), he shall be given a job assignment at his present headquarters that he is physically able and qualified to perform, but such job assignment shall not last longer than five (5) years.

Undisputed are the following facts. The plaintiff filed this lawsuit for declaratory judgment after the defendant labor unions asked plaintiff to return MP & L employee Sidney Austin ("Austin") from plaintiff's facility in Madison, Mississippi, to a position at plaintiff's Flora, Mississippi, facility, where Austin worked prior to being transferred to Madison on September 27, 1993. Because Austin was disabled, between the age of 60 and 65, and had been employed by plaintiff for at least thirty years, the defendants contended that pursuant to Paragraph 58(d) plaintiff was obligated to provide Austin with a job assignment that Austin was physically able and qualified to perform at plaintiff's Flora facility.

**9.** Title 29 U.S.C. § 185(a) provides:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Plaintiff first denied the grievance and contended that it had complied with paragraph 58(d) of the Memorandum of Agreement. Subsequently, plaintiff contended that "paragraph 58(d) is in conflict with the Federal laws and therefore it is unenforceable and must be suspended as provided for in paragraph 60 of the Memorandum of Agreement." Paragraph 60 of the Memorandum of Agreement provides that:

> 60. It is understood and agreed that any part of this agreement that may be construed by proper authority to be in conflict with any mandatory State or Federal Laws, then such part shall be suspended and the appropriate mandatory provision of the State or Federal Laws shall prevail.

After filing this action for a declaratory judgment, plaintiff then filed a motion for summary judgment, contending that it was entitled to judgment as a matter of law because paragraph 58(d) of the Memorandum of Agreement violates the ADEA.

In response to plaintiff's motion for summary judgment, the defendants filed a cross-claim for summary judgment asking this court to find that paragraph 58(d) is part of a bona fide seniority system and, therefore, is not violative of the ADEA. The parties' intent in adopting the provision, say defendants, was free of any age animus and not intended to evade the purposes of the ADEA. For the purposes of this motion, plaintiff conceded during oral arguments that paragraph 58(d) was not aimed at discriminating against older workers. Furthermore, say defendants, paragraph 58(d) was adopted to rectify past injustices in which older workers, who became physically unable to perform their duties at their present locations, were forced to abandon their jobs (i.e., retire) or transfer to any MP & L locations selected by the company. According to defendants, this development alone is enough to protect this plan under the ADEA.

Defendants reveal that from 1962 until 1973, plaintiff was allowed to transfer any employee who became disabled to another location and/or position. During 1962 and 1973, the unions say they noticed that a pattern developed whereby the Company would simply transfer older disabled employ-

ees to a distant and inconvenient location. This caused older employees who were offered a transfer to decline the offer. As a result, older employees were forced into early retirement. In 1973, during contract negotiations, the unions proposed changes to the transfer provision. The purpose of the proposed changes, say the union defendants, was to reward, instead of punish, long time service and to prevent the Company from acting discriminatorily against older employees.

So, during these contract negotiations, the unions requested that the benefit of remaining at their present locations be given to employees, who became disabled, if the employees had been employed by plaintiff for 30 years. Plaintiff, however, demanded that in addition to having 30 years of service, employees also would have to be at least 60 years old to qualify for the benefit. In the end, the parties agreed that employees who became disabled would be allowed to remain at their present locations if those employees were at least 60 years old and had 30 years of service with plaintiff. That policy remained in effect until 1978, at which time plaintiff attempted to delete the provision from the collective bargaining agreement. This move was resisted by the unions. Later, in that same year, the parties reached a compromise which allowed disabled employees to qualify under the provision who had 30 years of service with the plaintiff and who were between the ages of 60 and 65. This benefit was limited to a period of five years.

■ As earlier stated, the inquiry here is whether paragraph 58(d) violates the strictures of the ADEA. Congress' three stated goals in enacting the ADEA were: "(1) to promote the employment of older persons based on their ability rather than their age; (2) to prohibit arbitrary age discrimination in employment; and (3) to provide help to employers and workers in finding ways of meeting problems arising from the impact of age on employment." *EEOC v. Boeing Services Intern.*, 968 F.2d 549, 553 (5th Cir.1992), citing Title 29 U.S.C. § 621(b); *Jensen v. Gulf Oil Refining and Mktg. Co.*, 623 F.2d 406, 408 (5th Cir.1980). Section 4(a)(1) of the ADEA, Title 29 U.S.C. § 623(a)(1), makes it

illegal "for an employer to fail or refuse to hire or to discharge ·an individual or otherwise discriminate against ·any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age."

While section 4(a)(1) of the ADEA outlaws age-based discrimination, three exceptions to the prohibition are found in § 623(f)(1) and (f)(2). Section 623(f)(1) permits age-based discrimination "where age is a bona fide occupational qualification ... or where the differentiation is based on reasonable factors other than age...." Title 29 U.S.C. § 623(f)(1). "In section 4(f)(2) of the Act, ... Congress expressly permitted employers to discriminate based on age in 'observ[ing] the terms of [a bona fide seniority system or] any bona fide employee benefit plan such as a retirement, pension, or insurance plan'—so long as the employer's compliance with the plan did not represent a 'subterfuge to evade the purposes' of the Act or where an employee is discharged for good cause." *Boeing Services,* 968 F.2d at 553, citing § 623(f)(2). "Section 4(f)(2) of the Act thus exempts certain 'age-based employment decisions ...' from the prohibitions of the ADEA.'" *Boeing Services,* 968 F.2d at 553, citing *Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 161, 109 S.Ct. 2854, 2858, 106 L.Ed.2d 134 (1989).

■ Plaintiff contends that paragraph 58(d) of the Memorandum of Agreement violates Title 29 U.S.C. § 623(a)(1) and falls outside of the exceptions carved out by Congress in Title 29 U.S.C. § 623(f)(1) and (f)(2). Says plaintiff, Paragraph 58(d) violates the ADEA because it allows a privilege of employment to be doled out to one subset of the protected group (i.e., persons between the ages of 60 and 65), while denying the same privilege of employment to other individuals (i.e., persons between the ages of 40 and 59 and those 66 and older) who are also protected by the ADEA. Plaintiff cites various authority to support its contention. *See* Title 29 C.F.R. § 1625.2(a) (stating "It is unlawful in situations where this Act applies, for an employer to discriminate in hiring or *in any other way by giving preference* because of age between individuals 40 and over...."); *see also Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) (holding that if TWA grants some disqualified captains the "privilege" of bumping less senior flight engineers, it may not deny this opportunity to others because of their age); *American Ass'n of Retired Persons v. Farmers Group, Inc.,* 943 F.2d 996, 1001, 1002 (9th Cir.1991) (holding that Farmers Group's pension plan was facially violative of the ADEA where it provided that payment of retirement benefits would be postponed and no benefits would be paid if an employee continued employment after the normal age of retirement, (65), and where the pension plan precluded any actuarial increases in the interim between 65 and actual retirement).

In the case *sub judice,* paragraph 58(d) on its face explicitly favors members of the protected age group between the ages of 60 and 65 over other members of the protected age group with respect to a benefit of employment.[10] That is, only workers between the ages of 60 and 65 who have been with the company for 30 years are granted the privilege of remaining at their present headquarters should they become disabled. Other members of the protected group (i.e., employees between the ages of 40 and 60 and those 66 and older) who satisfy the 30-year employment and disability prerequisites are not granted this privilege. For example, a disabled 50-year-old employee with 30 years of employment would not be entitled to remain at his present headquarters under paragraph 58(d) solely because he is not between the ages of 60 and 65. Because this provision against transferring is keyed to an employee's age, it is facially violative of the ADEA. *See Thurston,* 469 U.S. at 121, 105 S.Ct. at 621–22.

Although this court finds that paragraph 58(d) is facially violative of the ADEA, our inquiry does not end here. *Id.; Boeing Services,* 968 F.2d at 553. This court must now

10. Neither MP & L nor the unions have offered an explanation as to why the cut-off age for receiving the benefit of remaining at their present headquarters in the event of disability is at 60 to 65 years of age.

determine whether this provision is insulated from attack because it falls within the purview of Title 29 U.S.C. §§ 623(f)(1) or (f)(2), subsections where Congress expressly has permitted employers to discriminate. *Boeing Services,* 968 F.2d at 553.

■ The defendants have asked this court to find that paragraph 58(d) is a benefit under MP & L's employees' negotiated bona fide seniority plan. If this court were to determine that paragraph 58(d) is a term of a bona fide seniority plan, defendants argue, section 623(f)(2) would shield the bona fide seniority plan so long as the provision was not adopted to evade the purposes of the ADEA. *Boeing Services,* 968 F.2d at 553. In its written memoranda and in oral arguments before this court, plaintiff contended that paragraph 58(d) is not a term of a bona fide seniority system because the primary criterion of paragraph 58 is disability, while the primary criterion of paragraph 58(d) is age.

Before this court reaches the question of whether paragraph 58(d) is part of a bona fide seniority system, this court must first determine whether paragraph 58(d) is actually included in the seniority system that exists between the parties. In the case *sub judice,* the collective bargaining agreement by its own terms clearly demonstrates that paragraph 58(d) is unrelated to the seniority provisions of the contract. While it is true that paragraph 58(d) requires employees to satisfy a 30–year length of service criterion, a component that would be crucial to any seniority plan, paragraph 58(d) by its own terms expressly disclaims it to be a part of the seniority provisions. Paragraph 58(d) explicitly states that "[w]hen an employee becomes physically unable to perform the duties of his classification due to a cause other than his own gross misconduct or injury sustained while working in employment outside the Company, the Company will make reasonable effort to assign him to another job, if available, which he is qualified and physically able to perform, *and in such cases the advertising and seniority provisions of this contract shall not be applicable.*" (Emphasis added). So, the collective bargaining agreement by its own terms

makes it clear that the seniority provisions of the contract are inapplicable in the administration of this provision. It follows then that paragraph 58(d) is not a component of MP & L's seniority system. In fact, if paragraph 58(d) were a component of MP & L's seniority system, not only would the seniority provisions of the contract be applicable here, they would govern. Because this court is persuaded that the parties to this collective bargaining agreement did not contemplate paragraph 58(d) as part of their seniority system, this court is unwilling to reach a contrary result merely because the provision contains a longevity requirement.

■ Even assuming arguendo that paragraph 58(d) is a part of MP & L's seniority system, our inquiry would not end. The question facing this court would then be whether the seniority system with this provision is bona fide. In enacting the ADEA, Congress did not define "bona fide seniority system." This court, however, is not without guidance. A seniority system is defined in the Equal Employment Opportunity Commission's Compliance Manual § 616.3 as "an employment system that allots to employees rights and benefits according to the length of their employment. *The principal feature of all seniority systems is time.* Employment benefits are assigned on the basis of some measure of length of time served in the employment." The Code of Federal Regulations' interpretation of the Age Discrimination in Employment Act contains a similar explanation:

> ... "[t]hough a seniority system may be qualified by such factors as merit, capacity, or ability, *any bona fide seniority system must be based on length of service as the primary criterion* for the equitable allocation of available employment opportunities and prerogatives among younger and older workers."

29 C.F.R. § 1625.8(a). (Emphasis added).

In the instant case, longevity is not the primary criterion of paragraph 58(d). Disability, age and longevity together are the primary criteria for paragraph 58(d). That is, even if an employee has satisfied the 30–year longevity requirement, he would not be entitled to enjoy the benefit set forth in

paragraph 58(d) unless he also was disabled and between the ages of 60 and 65. Moreover, an employee who satisfied both the longevity and disability requirement of 58(d) would not be entitled to remain at his present work site unless that employee also was between the ages of 60 and 65. In essence, employees are rewarded for their disability and age, not basically for the length of service provided to their employer. *See Betts,* 492 U.S. at 168–70, 109 S.Ct. at 2862 (The United States Supreme Court found that a pre-ADEA plan provision, which limited disability retirement benefits to those who retired before reaching the age of 60 was insulated from challenge as a subterfuge. *The Court, however, noted that the EEOC had not challenged the plan's age–60 rule.* Instead, the EEOC had challenged a post-ADEA amendment that guaranteed disabled retirees a minimum of 30% of their final salary, but did not extend that automatic minimum to disabled employees who retire after 60.).

Because paragraph 58(d) in question here turns equally on disability and age, rather than basically upon length of service, this court is unable to find it to be a term of a bona fide seniority system, as "any bona fide seniority system must be based on length of service as the primary criterion." *See* 29 C.F.R. 1625.8(a). This court must reach this result even though the evidence before it amply demonstrates that the age component became a part of this provision upon the plaintiff's insistence. *See Levine v. Fairleigh Dickinson University,* 646 F.2d 825, 832 (3rd Cir.1981) (holding that the ADEA's prohibition of age discrimination in employment takes precedence over a collective bargaining agreement).

■ Having rejected defendants' argument that paragraph 58(d) constitutes part of a bona fide seniority system, the court next contemplates defendants' argument that paragraph 58(d) is sheltered under the ADEA as an attempt to remedy past discrimination by MP & L against older workers. This argument, too, has its fatal flaws.

First of all, defendants offer no proof that MP & L actually practiced discrimination against its older workers by forcing those physically unfit either to abandon their jobs or transfer to distant locations. Throughout their papers, defendants mention this circumstance, but do not shore it up with any credible proof. MP & L does not concede the allegation. Hence, in the absence of proof on the point, this court cannot justify paragraph 58(d) on this contention of past discrimination.

Defendants' argument has an additional defect. According to defendants, Title 29 § 1625.2(b) of the Code of Federal Regulations legitimizes paragraph 58(d), where paragraph 58(d) aims at remedying past discriminatory conduct. Section 1625.2(b) provides:

> The extension of additional benefits, such as increased severance pay, to older employees within the protected group may be lawful if an employer has a reasonable basis to conclude that those benefits will counteract problems related to age discrimination. The extension of those additional benefits may not be used as a means to accomplish practices otherwise prohibited by the Act.

In response to comments of ambiguity about paragraph (b), the Equal Employment Opportunity Commission submitted the following "final interpretation" of this particular provision of the ADEA in the Federal Register. It reads as follows:

> Comments received on this section focused on the ambiguity of paragraph (b) of this section regarding the extension of additional benefits to older employees within the protected age group. Several comments also raised questions regarding the legal basis for discrimination between members of the protected group.

> The proposed interpretation was never intended to sanction discrimination between individuals entitled to the protections of the act. Rather, the section was intended to permit an employer to extend additional benefits to older members of the protected group in recognition of problems peculiar to those older individuals. The Commission intends that the final interpretation contained in paragraph (b) of this section provide for a continuation of the flexible

approach first announced in administrative Opinion Letters of the Department of Labor. Opinion Letter 404 of the Wage Administrator of the Department of Labor (August 26, 1976) advises that it is permissible to insert contract language which would require that a certain number of positions be made available to an older segment of the protected age group. Similarly, Opinion Letter 451 (January 31, 1978) permits varying amounts of severance pay based on, in part, an employee's age. The basis for both opinion letters was that an employer can take measures to counteract discrimination which is more prevalent against older members of the protected group. The former letter, 404, recognized that an older employee (55 and over) may be a more frequent target of age discrimination, and the latter opinion, 451, recognized that same principle in the context of job relocation. In both instances, the opinions were based on tacit recognition of the fact that age discrimination is frequently more prevalent and more severe against older workers in the protected age group.

Final Interpretations: Age Discrimination in Employment Act, 46 FR 47724 (1981).

Although § 1625.2(b) and its "final interpretation" proclaim that "[t]he proposed interpretation was never intended to sanction discrimination between individuals entitled to the protections of the act," paragraph 58(d) violates this directive. As stated above in the "final interpretation," "the section was intended to permit an employer to extend additional benefits to older members of the protected group in recognition of problems *peculiar to those older individuals.*" (Emphasis added). In the instant case, the defendants maintain that they negotiated paragraph 58(d) as a response to MP & L's past discriminatory conduct towards its older employees. Paragraph 58(d) applies, however, only to employees between the ages of 60 and 65. It does not apply to those between 40 and 59 or above 65. No explanation for this preference is provided. Hence, defendants have not shown that this alleged past discriminatory conduct was "peculiar" to those between the ages of 60 and 65. Therefore, for the above reasons, this court is

unpersuaded that paragraph 58(d) is validated under § 1625.2(b).

## CONCLUSION

Having determined that paragraph 58(d) is facially violative of the ADEA; that the provision is not a part of a seniority system; that even if it were, the seniority system with the provision is not bona fide; and that the provision is not sheltered by §. 1625.2(b), this court is persuaded to grant the plaintiff's motion for summary judgment and to deny defendants'. A separate judgment shall be entered in accordance with the local rules.

### SO ORDERED AND ADJUDGED.