RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0242P (6th Cir.)
File Name: 02a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DENNIS CLINE, et al.,
      *Plaintiffs-Appellants,*

      *v.*

GENERAL DYNAMICS LAND
SYSTEMS, INC.,
      *Defendant-Appellee.*

No. 00-3468

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 99-07401—David A. Katz, District Judge.

Argued: September 18, 2001

Decided and Filed: July 22, 2002

Before: RYAN and COLE, Circuit Judges; WILLIAMS,
District Judge.

---

*The Honorable Glen M. Williams, United States District Judge for
the Western District of Virginia, sitting by designation.

———————————

**COUNSEL**

**ARGUED:**    Mark W. Biggerman, REMINGER & REMINGER, Cleveland, Ohio, E. Bruce Hadden, HADDEN COMPANY, Columbus, Ohio, for Appellants.  Craig C. Martin, JENNER & BLOCK, Chicago, Illinois, for Appellee.
**ON BRIEF:**    Mark W. Biggerman, REMINGER & REMINGER, Cleveland, Ohio, E. Bruce Hadden, HADDEN COMPANY, Columbus, Ohio, for Appellants.  Craig C. Martin, JENNER & BLOCK, Chicago, Illinois, for Appellee.

RYAN, J., delivered the opinion of the court.  COLE, J. (pp. 12-17), delivered a separate concurring opinion. WILLIAMS, D. J. (pp. 18-19), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

RYAN, Circuit Judge.  We must decide whether the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, which prohibits an employer from discriminating against any employee age 40 and over on the basis of age, provides a cause of action for employees within the protected class who claim that their employer discriminated against them on the basis of age because of the employer's more favorable treatment of older employees, also within the class. We hold that on the facts of this case the ADEA does provide the plaintiffs a cause of action, and that they have made out an actionable claim.

We rest our holding on familiar canons of statutory construction too elementary to require a citation, which direct courts to apply statutes consistent with their plain language; that is, by assigning to the words of the statute their primary and generally understood meaning.  We conclude that in dismissing the plaintiffs' complaint, the district court opinion

Finally, this dissent is based on a common sense understanding of collective bargaining agreements.  I am of the opinion that the ADEA was not intended to interfere with the collective bargaining process or with collective bargaining agreements.  The courts should not stand watch over labor unions who represent employees of a company and interfere with their negotiations with employers.  I believe that it is obvious that the older a person is, the greater his or her needs become.  Therefore, a 50-year-old worker may need more protection or more benefits than a 40-year-old worker.  The majority's holding in this case  potentially could have a devastating effect on the collective bargaining process, calling into question the validity of seniority and early retirement programs contained in collective bargaining agreements across the country.  If such is allowed, bargaining for all workers, regardless of age, would suffer.

For the foregoing reasons, I would affirm the district court's decision to grant the Appellee's motion to dismiss based upon the determination that the Appellants did not allege facts to support a claim for discrimination under the ADEA. Therefore, I respectfully dissent from the majority's opinion.

I do concur in the majority's decision not to consider whether the plaintiffs have made out an actionable claim under the Ohio Civil Rights Act because the district court should be given the opportunity to address this issue on remand.

---

**DISSENT**

---

GLEN M. WILLIAMS, District Judge, dissenting. Whether you call it "reverse discrimination" or not, no court in the nation has recognized a claim for age discrimination under the ADEA when brought by younger workers within the protected class arguing that they were discriminated against in favor of older workers. As the majority recognizes above, the ADEA was developed by Congress for the purpose of alleviating problems faced by older workers, not the problems of younger ones. In this case, workers who were between 40 years of age and 50 years of age have brought this action claiming that, because they are a part of the protected class -- all people older than 40 -- they are entitled to protection under the ADEA not only from workers who are younger than they are, but also from workers who are older than they are.

I am persuaded by the Seventh Circuit's reasoning in *Hamilton v. Caterpillar, Inc.,* 966 F.2d 1226 (7th Cir. 1992), that such a claim is not cognizable under the ADEA. As the court in *Hamilton* explained, "the ADEA 'does not protect the young as well as the old, or even, we think, the younger *against* the older.'" *Id*. at 1227 (quoting *Karlen v. City Colleges of Chicago*, 837 F.2d 314, 318 (7th Cir. 1988)).The court reasoned that age discrimination cannot be reversed as can sex or race discrimination because "[a]ge is not a distinction that arises at birth. Nor is age immutable." *Id.*

Furthermore, while the statutory language of the ADEA may leave room for argument that reverse age discrimination is cognizable, I  concur with the *Hamilton* court in that Section 621 of the ADEA refers to "older workers" and "older persons." *See* 29 U.S.C. § 621. These references are, therefore, telling of Congress's intent to prohibit employers from discriminating against older workers, as opposed to younger ones.

departs from this familiar maxim, and therefore, we reverse the district court's judgment and remand for further proceedings.

## I.

Dennis Cline, as named representative for the putative class, and 195 other employees of General Dynamics Land Systems, Inc., brought suit against their employer after their labor union, the United Auto Workers, and General Dynamics entered into a new collective bargaining agreement (CBA2). The agreement took effect July 1, 1997. Before that date, the parties had been bound by a collective bargaining agreement (CBA1) that obligated General Dynamics to provide full health benefits to retired workers who had accumulated 30 years of seniority. With one exception, the new agreement no longer required General Dynamics to provide full health benefits to retirees. That exception held that only employees 50 years of age or older on July 1, 1997, remained eligible to receive full health benefits upon retirement. As a result, the plaintiffs sought, and obtained, a determination from the Equal Employment Opportunity Commission that the CBA2 adversely affected General Dynamics employees who were between the ages of 40 and 49 on July 1, 1997.

Cline and his fellow employees then filed suit under the ADEA, 29 U.S.C. §§ 621-634, and the Ohio Civil Rights Act, Ohio Rev. Code § 4112.99. They alleged that the provision of health benefits solely to those over the age of 50 constituted illegal discrimination based on age. Each of the plaintiffs was between the ages of 40 and 49 on July 1, 1997, and thus a member of the ADEA's protected class. For purposes of the lawsuit, the plaintiffs self-divided into three groups. The so-called "Cline group" is composed of 183 current General Dynamics employees who are no longer eligible for full health benefits upon retirement. The "Babb group" consists of 10 employees who retired prior to July 1, 1997, in order to receive full health benefits. Finally, the "Diaz group" includes three employees who retired after July 1, 1997, and are ineligible for health benefits.

In addition to their age discrimination claims, the plaintiffs also sought "declaratory judgment," but in their complaint they made no reference to the Declaratory Judgment Act; they simply requested that the district court determine whether the Cline group had standing to sue and whether their claims were ripe. If the court determined that the Cline group did not have either standing and/or ripe claims, the plaintiffs then requested that the district court determine when they would have standing and ripe claims.

Upon the defendant's motion, the district court dismissed the plaintiffs' suit pursuant to Fed. R. Civ. P. 12(b)(6). At the outset of its memorandum opinion, the district court noted that the ADEA and the Ohio Civil Rights Act would be interpreted together and receive identical legal analyses. The district court characterized the plaintiffs' argument as a claim that they were wrongfully denied existing job benefits on the basis of age. The court held that under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002(1), (2)(A), General Dynamics's provision of health benefits upon retirement was part of a "welfare benefit plan," which the company was not obligated to provide. The court concluded that it would have been permissible to withhold retiree health benefits from all employees under the CBA2. While the district court admitted that the CBA2 "facially discriminates" by creating two classes of employees based solely on age, it ultimately concluded that the ADEA does not recognize claims for "reverse discrimination." The court reasoned that the ADEA was drafted to aid "*older* workers," not those who suffer age discrimination because they are too young. The district court did not specifically address Cline's request for declaratory relief.

## II.

We review *de novo* a district court's grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999).

The starting point in determining how a statute is to be applied is the language of the statute itself. *Consumer Prod.*

because when discriminated against in favor of older workers, younger protected workers cannot prove that substantially younger persons were favored. As a result, those younger workers could not satisfy the substantially younger requirement, and thus could not state a *prima facie* claim under the ADEA. In short, *Consolidated Coin*, by limiting the *prima facie* test to persons injured by discrimination that favors someone substantially younger, suggests that reverse age discrimination claims are not permitted under the ADEA.

Despite that implication, three reasons give me confidence that the Supreme Court would approve of our result today. First, the Supreme Court was not considering reverse age discrimination in *Consolidated Coin*. Second, the *Consolidated Coin* holding acknowledged that members within the protected class may sue one another. Third, we follow the same recipe as the Supreme Court did — we look to the plain text of §§ 623(a)(1) and 631(a) to determine whether so-called reverse age discrimination is actionable under the ADEA. Based upon the combined effect of these three reasons, I do not believe that Supreme Court precedent dictates a result different than what we reach today. Moreover, had the Supreme Court also considered the question of reverse age discrimination in *Consolidated Coin*, I believe it would have expressed the fourth part of the *prima facie* test as requiring proof of "substantial difference in age" as opposed to "substantially younger." And, notably, based on our holding, the fourth prong of the *prima facie* test in this Circuit requires proof of substantial difference in age, not necessarily substantially younger proof.

In short, the result we reach today strikes me as counterintuitive. But, the clarity with which Congress spoke convinces me that the ADEA permits younger workers in the protected class to sue their employers for age discrimination that favors older employees. Also, although a close call, I do not believe that our result violates Supreme Court precedent. For those reasons, I agree to reverse the district court's dismissal of plaintiffs' ADEA claims.

*Medaphis Physician Servs. Corp.*, 612 N.W.2d 845, 847 (Mich. Ct. App.) (holding that the Michigan Civil Rights Act "protects workers who are discriminated against on the basis of youth"), *appeal denied*, 618 N.W.2d 596 (Mich. 2000); *see also Graffam v. Scott Paper Co.*, 870 F. Supp. 389, 405 n.27 (D. Me. 1994) (noting that the Maine Human Rights Act does not limit age discrimination claims to a certain range of ages). Thus, based on the congressional statements of purpose and similar state-law provisions, it is not absurd to allow members of the protected class to sue for reverse discrimination.

The third reason for my separate concurrence is to reconcile the implicit tension between our conclusion today and the Supreme Court's holding in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996). In *Consolidated Coin*, the Supreme Court considered whether to satisfy the *prima facie* test for indirectly proving age discrimination, an ADEA plaintiff had to be replaced by a person outside the protected class. *Id.* at 312. More concretely, the Court had before it the issue of whether a fifty-six year-old employee who was replaced by a forty year-old satisfied the fourth element of the *prima facie* test even though both employees belonged to the protected class. *Id.* The Court's analysis hinged on the logical connection between the elements of the *prima facie* test and illegal age discrimination. *Id.* at 311-12. After looking first at the text of the ADEA, the Supreme Court concluded that the fourth element of the *prima facie* test should include a "substantially younger" requirement instead of a "membership in the protected class" requirement. *Id.* at 313. Thus, *Consolidated Coin* instructs that to indirectly prove age discrimination, an ADEA plaintiff must demonstrate age discrimination that favors a substantially younger person.

Although this is a direct evidence age discrimination case and consequently does not rely on the *prima facie* test, the impact of the substantially younger requirement is significant. The substantially younger requirement implies that reverse age discrimination claims are not permitted under the ADEA

*Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *United States v. Ospina*, 18 F.3d 1332, 1335 (6th Cir. 1994). This court has said that "[t]he primary rule of statutory construction is to ascertain and give effect to the legislative intent." *Hedgepeth v. Tenn.*, 215 F.3d 608, 616 (6th Cir. 2000). Legislative intent, however, is gleaned primarily from the statute's plain language, and where the statute's language is plain and unambiguous, there is no justification for resorting to legislative history to ascertain the lawmaker's intent—the words of the statute suffice. *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir. 1999). The Supreme Court has recognized that "statutory provisions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). Moreover, if a court thinks statutory language does not reflect what the court believes the legislators "must have" intended, the court may not, under the guise of "statutory interpretation," rectify the problem by holding, in effect, that the legislators intended something other than what they declared. "'It is not the Court's role to address perceived inadequacies in [a statute].'" *In re Aberl*, 78 F.3d 241, 244 (6th Cir. 1996) (quoting *Wolf Creek Collieries v. Robinson*, 872 F.2d 1264, 1269 (6th Cir. 1989)) (alteration in original). Thus, courts must apply a statute as its language directs, not in accordance with a judicial supposition as to what the legislature might better have written. The application of these simple and settled canons easily determines the proper resolution of this case. Section 623 (a)(1) of the ADEA reads:

It shall be unlawful for an employer—

**(1)** to fail or refuse to hire or to discharge *any individual* or otherwise discriminate against *any individual* with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1) (emphasis added). This language clearly and unambiguously forbids employers from defining the terms and benefits of "any individual['s]" employment based solely on his or her age. In § 631(a), Congress declared that "any individual" means those "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Thus, by the law's plain language, an employer may not discriminate against any worker age 40 or older on the basis of age. Those younger than 40 are not protected by the ADEA. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

To reach the conclusion for which the defendant argues, and that was found persuasive by the district court, we would be required to hold that the plain language of § 623(a)(1) and § 631(a) does not mean what it says when it refers to "any individual," but means, instead, "older workers." Thus, only "older workers," meaning those individuals who are at least 40 years of age and, in addition, relatively older than any other group of employees with whom they are compared, are protected. This *interpretive* reading of the statute led the district court to conclude that the ADEA does not prohibit an employer from discriminating, on the basis of age, against "any individual" who is a member of the ADEA's protected class, but only prohibits discrimination against those in the protected class who are "older" than the favored employees. We think the plain meaning of the statute will not bear that reading.

In support of its holding, the district court cited to *Hamilton v. Caterpillar, Inc.*, 966 F.2d 1226, 1228 (7th Cir. 1992), for the proposition that the ADEA does not recognize claims of reverse age discrimination. We recognize that *Hamilton* and the majority of courts to consider the question before us have held that the ADEA does not provide a cause of action for "reverse discrimination." *See, e.g.*, *Schuler v. Polaroid Corp.*, 848 F.2d 276, 278 (1st Cir. 1988) (Breyer, J.); *Karlen v. City Colls. of Chicago*, 837 F.2d 314, 318 (7th Cir. 1988); *Dittman v. General Motors Corp.*, 941 F. Supp. 284, 287 (D. Conn. 1996), *aff'd on other grounds*, No. 96-9442,1997 WL 340267 (2d Cir. June 20, 1997) (unpublished disposition);

Finally, this Court is confined to reviewing only statutory text because allowing reverse discrimination suits by persons in the protected class is not absurd as either a matter of reason or of policy. Allowing persons in the protected class to sue for reverse discrimination is a reasonable means of redressing two of the findings that prompted Congress to enact the ADEA. *See generally* 29 U.S.C. § 621. Congress declared in § 621(a)(1) that "in the face of rising productivity and affluence, older workers find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs." 29 U.S.C. § 621(a)(1). Permitting younger members of the protected class to sue employers for age discrimination in favor of older workers is consistent with that finding. For example, a fifty year-old employee is equally disadvantaged in retaining and regaining employment if he is age discriminated against in favor of a thirty year-old as if he is age discriminated against in favor of a sixty year-old. In another of its findings, Congress declared that "the existence in industries affecting commerce, of arbitrary discrimination in employment because of age, burdens commerce and the free flow of goods in commerce." 29 U.S.C. § 621(a)(4). Thus, Congress concluded that all age discrimination burdens commerce. Consequently, even the so-called reverse discrimination suits would alleviate the congressionally identified burden on commerce.

Likewise, as a matter of policy, allowing reverse age discrimination suits is not absurd. Such an interpretation hardly "open[s] the floodgates to attacks on every retirement plan," as the Seventh Circuit feared. *Hamilton*, 966 F.2d at 1228. Rather, courts have already begun to interpret state discrimination laws as allowing reverse age discrimination suits. *See, e.g., Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 957 (N.J. 1999) (7-0 decision) (concluding that New Jersey's Law Against Discrimination was "broad enough to accommodate [plaintiff's] claim of age discrimination based on youth"); *Ogden v. Bureau of Labor*, 699 P.2d 189, 192 (Or. 1985) (en banc) (interpreting Oregon age discrimination law as allowing claims by younger workers); *Zanni v.*

Seventh Circuit's holding, our reading of §§ 623 and 631 does not render § 623(*l*)(1)(A) meaningless. Section 623(*l*)(1)(A) allows an employer to set a minimum age as a condition for eligibility in a pension plan. 29 U.S.C. § 623(*l*)(1)(A). If younger protected employees could not sue their employers for the preferable pension treatment of older employees, then the minimum age exception in § 623(*l*)(1)(A) would not be necessary (because only younger employees could sue based on a minimum retirement age). In sum, because our reading of §§ 623 and 631 is not manifestly inconsistent with § 621(a) and because § 623(*l*)(1)(A) has significance only if §§ 623 and 631 permit reverse age discrimination suits, there is no statutory conflict to justify looking beyond the text of the statutes.

In addition, this Court should not look beyond the statutory text because interpreting §§ 623 and 631 as allowing reverse age discrimination suits is consistent with Congress's statutorily stated intent for enacting the ADEA. *See* 29 U.S.C. § 621(b). In § 621(b), Congress declared that the purposes of the ADEA were "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." *Id.* Allowing younger employees to sue older employees for age discrimination is consistent with those purposes. For example, when a forty-two year-old employee loses her job or benefits in favor of a fifty-two year-old employee due to her age, that termination is not based on her ability. Moreover, that loss of job or benefits furthers, instead of prohibits, arbitrary age discrimination in employment. Finally, permitting that type of age discrimination to continue without a remedy hardly amounts to a solution to the problems arising out of the impact of age on employment. In short, because a plain language reading of §§ 623 and 631 is consistent with the ADEA's purpose, there is no conflict between the specific intent of Congress and the statutory text to justify considering sources beyond the statutes themselves.

*Parker v. Wakelin*, 882 F.Supp. 1131, 1140 (D. Me. 1995); *but see Miss. Power & Light Co. v. Local Union Nos. 605 and 985, Int'l Bhd. of Elec. Workers*, 945 F.Supp. 980, 988 (S.D. Miss. 1996); *Rannels v. Hargrove*, 731 F.Supp. 1214, 1220-21 (E.D. Pa. 1990). For a variety of reasons, however, we do not find the reasoning undergirding these opinions persuasive.

We find that the *Hamilton* opinion fails to properly interpret the ADEA. First, it assigns far too much weight to the hortatory, generalized language of Congress's Statement of Findings and Purpose in the ADEA. Second, it ignores, indeed it reverses, the familiar rule that the more direct and specific language of a statute ordinarily trumps the more generalized. *Metro. Detroit Area Hosp. Servs., Inc. v. United States*, 634 F.2d 330, 334 (6th Cir. 1980).

Turning to the Statement of Findings and Purpose:

(a) The Congress hereby finds and declares that—

(1) in the face of rising productivity and affluence, *older workers* find themselves disadvantaged in their efforts to retain employment, and especially to regain employment when displaced from jobs[.]

. . . .

(b) It is therefore the purpose of this chapter to promote employment of *older persons* based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment.

29 U.S.C. § 621(a)-(b) (emphasis added). Notably, neither § 621, nor any other section of the statute, provides a definition of "older workers" or "older persons." Nonetheless, because statutory language should be given its plain meaning absent evidence to the contrary, we agree that Congress intended to protect older workers. But to hold that the ADEA protects older workers from employers' age

discrimination provides no answer to the question this litigation presents. The question here is whether any worker over the age of 40 ("any individual") may be discriminated against on the basis of age. To hold, as the ADEA requires us to hold, that employment age discrimination against *any* worker at least 40 years of age is prohibited, does nothing to defeat the congressional intent to protect "older workers" and "older persons."

To repeat: § 623(a)(1) and § 631(a), taken together, prohibit an employer from discriminating against "any individual" 40 years of age or older based on that person's age. "'When we can discern an unambiguous and plain meaning from the language of a statute, our task is at an end.'" *Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 910 (6th Cir. 2000) (quoting *Bartlik v. U.S. Dep't of Labor*, 62 F.3d 163, 166 (6th Cir. 1995)).

Our holding does not change even if one concludes—and we do not—that the hortatory language of § 621 is inconsistent with the plain meaning of § 623(a)(1) and § 631(a). When two different parts of a statute appear to conflict, the court should, if possible, give these parts a "harmonious, comprehensive meaning." *United States v. Stauffer Chem. Co.*, 684 F.2d 1174, 1184 (6th Cir. 1982), *aff'd*, 464 U.S. 165 (1984). The exhortation in § 621 to protect "older workers" and "older persons" is easily reconciled with the specific provisions of § 623 and § 631, which prohibit age discrimination against "any individual" age 40 or older. Courts must interpret statutes "'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000) (citation omitted). In § 621, Congress declared its intention to protect older workers, and in § 623 and § 631, it identified the older workers it intends to protect as "any individual" age 40 or older. Thus, the several relevant sections of the statute are easily reconciled.

as a basis for employment decisions involving persons ages forty and over.

Second, this Court is bound to apply the plain language of the ADEA here. The law of the Circuit is well-established; in its efforts to interpret a statute, a court may look beyond the text only in four limited instances: (1) where the text is ambiguous; (2) where a literal reading is inconsistent with other statutory provisions; (3) where a plain-language reading is inconsistent with congressional intent; (4) where the plain statutory meaning leads to absurd results. *See Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 (6th Cir. 1998); *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995); *see also Limited, Inc. v. Comm'r of Internal Revenue*, 286 F.3d 324, 332 (6th Cir. 2002) ("Resort to legislative history is not appropriate, however, if the text of the statute may be read unambiguously and reasonably."). Not one of those limited situations is present here. And, for that reason, there is no basis for looking beyond the plain statutory language.

As discussed above, the texts of §§ 623 and 631 are not ambiguous. Rather, they suggest an unequivocal result — age discrimination in employment is generally unlawful and persons ages forty and over may sue an employer for such discrimination. Therefore, there is no ambiguity-based reason to look beyond the plain text of §§ 623 and 631.

Also, a literal reading of §§ 623 and 631 is not inconsistent with other statutory provisions. The Seventh Circuit in *Hamilton v. Caterpillar Inc.*, 966 F.2d 1226 (7th Cir. 1992), concluded that § 621(a)'s reference to "older workers" suggests that the ADEA's age discrimination prohibition applies only to workers who are older *vis-a-vis* preferably treated workers. *Id.* at 1228. But, § 621(a)'s use of the phrase "older workers" is at most ambiguous because "older workers" could also refer to that population of workers ages forty and over. Thus, at worst, there still is no definite inconsistency between our interpretation of §§ 623 and 631 and the language of § 621(a). However, in contrast to the

_____

**CONCURRENCE**

_____

R. GUY COLE, JR., Circuit Judge, concurring. I write separately to briefly set forth my thinking on this interesting question of law. While I join Judge Ryan's opinion based on the force of the plain language of the ADEA, I also entertain serious doubts as to whether Congress specifically intended that the ADEA allow persons ages forty and over to recover for so-called reverse age discrimination. Ultimately, from the text and structure of the ADEA, I conclude that in enacting the ADEA, Congress was most concerned with prohibiting age discrimination that favors younger over older employees, but that Congress's choice of language, whether specifically intended or not, also prohibits age discrimination that favors older over younger protected employees. With that perspective in mind, I emphasize three points: (1) sections 623 and 631 of Chapter 29 of the United States Code have clear meaning — they prohibit any form of age discrimination against persons ages forty and over; (2) no legally acceptable reason exists for looking beyond the language of the statute here; and (3) allowing reverse age discrimination suits is reconcilable with the "substantially younger" requirement announced in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996).

First, the text of the ADEA compels the conclusion that members in the protected class can sue for age discrimination that favors older over younger workers. Section 623 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Section 631 limits that age discrimination prohibition to "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Thus, taken together, §§ 623 and 631 unambiguously prohibit using age

Moreover, we do not share the commonly held belief that this situation is one of so-called "reverse discrimination." Insofar as we are able to determine, the expression "reverse discrimination" has no ascertainable meaning in the law. An action is either discriminatory or it is not discriminatory, and some discriminatory actions are prohibited by law. Presumably, what the district judge and others mean when they conclude that the ADEA does not prohibit "reverse discrimination" is that otherwise prohibited discrimination is permitted if the victims are literally (statutorily) within the protected class, but are a group within the class who in most cases are the beneficiaries of discrimination against others. There is no basis for this conclusion. We are not aware of any legal doctrine permitting courts to redraft anti-discrimination statutes so that they better advance the court's view of sound policy. Furthermore, even if we granted the district court its definition of "reverse discrimination," it is clear that Cline and his classmates did not suffer "reverse age discrimination." By the plain language of the ADEA they are the victims of "age discrimination." Congress has singled out the over-40 class of workers from the general workforce for protection from age discrimination by their employers. All the plaintiffs are members of the protected class created by § 631(a), and all properly allege that they were denied job benefits due to their age. Therefore, the protected class should be protected; to hold otherwise is discrimination, plain and simple.

Finally, we note that those courts adopting the *Hamilton* holding do so in contravention of the EEOC. The EEOC's interpretation of the ADEA "is significant because an agency's interpretation of an ambiguous provision within the statute it is authorized to implement is entitled to judicial deference." *Burzynski v. Cohen*, 264 F.3d 611, 619 (6th Cir. 2001) (internal quotation marks, citation, and alterations omitted). In its review of the matter at hand, the agency notes:

> It is unlawful . . . for an employer to discriminate in hiring or in any other way by giving preference because of age between individuals 40 and over. Thus, if two

people apply for the same position, and one is 42 and the other 52, the employer may not lawfully turn down either one on the basis of age, but must make such decision on the basis of some other factor.

29 C.F.R. § 1625.2(a) (emphasis added). While a court can certainly interpret a statute and properly reach a different conclusion from a federal agency, we are persuaded that the EEOC's interpretation of the ADEA is a true rendering of the language.

### III.

There is no doubt that the facts of this case are unusual and fall outside the typical ADEA claim, in that the plaintiffs were younger than the employees who were to receive health benefits upon retirement under the CBA2. But the fact that some members within the protected class were beneficiaries of the discriminatory action of which other members of the protected class—the plaintiffs—were victims, does not somehow suspend the language of the statute, which prohibits age discrimination against "any individual" within the protected class. As we stated earlier, when the language of a statute is unambiguous we have no basis for seeking a statute's meaning in its legislative history or intent. *In re Comshare, Inc. Sec. Litig.*, 183 F.3d at 549. The syllogism goes like this: The ADEA expressly prohibits denying any employee within the protected class an employment benefit solely because of age. The CBA2 provision in question denies a group of employees within the protected class an employee benefit based solely on their age. Therefore, the ADEA prohibits the CBA2 provision in question.

If Congress wanted to limit the ADEA to protect only those workers who are *relatively* older, it clearly had the power and acuity to do so. It did not. Whatever the policy justifications for holding otherwise, we are bound by the plain language of the statute and have no occasion to look outside of the text.

### IV.

We express no opinion whether the plaintiffs have made out an actionable claim under the Ohio Civil Rights Act because we think the district court should be given the opportunity to consider that question in light of what we have decided today with respect to the ADEA.

### V.

Because Cline and the other plaintiffs were each within the ADEA's protected class when their employer allegedly discriminated against them on the basis of age, we **REVERSE** the district court's grant of the motion to dismiss. On remand, the district court should address the plaintiffs' declaratory judgment argument concerning standing and ripeness, which was not considered by the district court and thus is not properly before us for review.