**In re M.T.G., INC. d/b/a/ Matrix Technologies Group, Debtor.**

**Guy C. Vining, Trustee for the Chapter 7 estate of M.T.G., Inc., and Todd M. Halbert, Appellants,**

**v.**

**Charles J. Taunt, Comerica Bank, and Kenneth M. Scheider, Appellees.**

No. CIV. 02–73392.

Bankruptcy No. 95–48268.

United States District Court, E.D. Michigan, Southern Division.

Sept. 11, 2003.

Todd M. Halbert, Southfield, MI, Guy C. Vining, Detroit, MI, for plaintiff.

Sheryl L. Toby, Honigman, Miller, Schwartz and Cohn, Kenneth M. Schneider, Jonathan S. Green, Miller Canfield, Paddock & Stone, Detroit, MI, for defendant.

### MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

#### I.

This appeal is sought to be taken by Appellants Todd Halbert, the special coun-sel, and Guy Vining, the Successor Trust-ee. The bankruptcy court's decision to set aside the Order Authorizing Trustee's Em-ployment of Todd M. Halbert as Special Counsel is at issue.[1]

Halbert was counsel for the Chapter 11 Debtor from August 7, 1995, through Feb-ruary 9, 1997, when the case was convert-ed to Chapter 7.[2] According to Halbert, over the past six years, he: (a) actively pursued and obtained the removal of the Former Trustee and his counsel; (b) as-sisted the unsecured creditors in electing an independent trustee who would pursue claims on their behalf; and, (c) continues to pursue relief from fraud upon the court, disgorgement of professional fees, and oth-er related relief.[3]

Appellee Comerica Bank was MTG's pri-mary secured creditor both before and during the bankruptcy case. Comerica Bank also holds a super-priority claim aris-ing under Bankruptcy Code § 507(b). Ap-pellee Taunt was the first trustee appoint-ed in MTG's bankruptcy case after its conversion to chapter 7, but later resigned. Appellee Kenneth M. Schneider was one of three special counsel who represented Douglas Ellman, the second trustee; Ell-man was later removed.[4]

On August 24, 2001, a creditor election was held and Vining was appointed as the

1. See Order Setting Aside Order Authorizing Trustee's Employment of Todd M. Halbert as Special Counsel entered in the bankruptcy case on July 9, 2002, and its Memorandum and Order Denying Trustee's and Todd Hal-bert's Motion to Reconsider the July 9, 2002 order, which was entered on August 13, 2002.

2. Halbert asserts a claim for unpaid fees and expenses incurred as counsel for MTG during MTG's attempt to reorganize under chapter 11 of the Bankruptcy Code and, according to Appellees, is a creditor in MTG's bankruptcy case.

3. Prior to his appointment as special counsel to the Successor Trustee, Halbert asserts that he spent hundreds of hours (total 1,500 hours on theses and other related matters) investi-gating the facts, researching and briefing the claims against the Bank, the Former Trustee, and their counsel.

4. Schneider also asserts a priority unsecured claim in the bankruptcy case for his unpaid fees and expenses incurred while he acted as court-appointed counsel for the trustee.

Chapter 7 trustee. In February 2002, Vining filed his Application to employ Halbert as special counsel to pursue the Fraud Claims against the Former Trustee, the Bank, and their counsel.[5] Pursuant to the Application, the Bankruptcy Court entered the Employment Order. Vining also employed Kenneth Nathan as general counsel pursuant to Section 327(a) of the Code to assist the him in the general administration of the Debtor's estate.[6]

Shortly after the Application was filed, Schneider filed his Motion to Vacate the Employment Order.[7] Comerica Bank, Taunt, and Taunt's law firm all joined in the motion to the extent it sought to set aside the employment order. The issues were briefed and a hearing was held on April 19, 2002.

On June 14, 2002, the bankruptcy court issued a bench opinion (the "Opinion"). The bankruptcy court separately ad-

---

5. Mr. Vining's application said, with respect to the duties Mr. Halbert would perform:

> 6. The Trustee wishes to retain Todd M. Halbert as special counsel to render legal advice, prepare pleadings and documents, appear at hearings, and provide other legal services in connection with the following matters (the "Litigation"):
>
> (a) The Former Trustee's motion for an order authorizing distributions to the Former Trustee, his counsel, and the Bank and Mr. Halbert's Objections thereto;
>
> (b) Mr. Halbert's motion to remove the Former Trustee, disqualify his counsel, and vacate the Comerica Settlement Order;
>
> (c) Mr. Halbert's Consolidated Motion to Disgorge Fees, the Order re: Consolidated Motion to Disgorge Fees, entered by this Court on December 27, 2001, and Mr. Halbert's Motion for Reconsideration of such Order;
>
> (d) Mr. Halbert's Consolidated Motion to Vacate 4/19/96, 4/30/96, and 8/29/96 Orders Because of Fraud on the Court and the Court's related Order Denying Consolidated Motion to Vacate 4/19/96, 4/30/96 and 8/29/96 Orders;
>
> (e) All proceedings relating to (1) the allowance, disallowance, and/or reconsideration of Comerica Bank claims, (2) compelling the Bank to disgorge collateral proceeds and other payments received on its claims, and (3) vacating or modifying the 4/30/96 Order modifying the automatic stay with respect to Comerica Bank;
>
> (f) All litigation which may be filed by the Trustee asserting claims against the Bank, the Former Trustee, their respective counsel, bank officers, employees, and former officers and employees, The

> Becker Group, Injectronics, Inc., Dale Hadel, Rick Schneider, and Richard May;
>
> (g) All matters related to the Trustee's reporting duties under 18 U.S.C. § 3057 and the Michigan Rules of Professional Conduct;
>
> (h) Prosecuting the estate's claims against other persons and entities, provided that (1) Mr. Halbert has no interest adverse to such additional representation and files an Amended Affidavit of Disinterestedness stating same, and (2) the Trustee files an Amendment to this Employment Application setting forth such additional representation; and
>
> (i) All appeals relating to the foregoing.

*Trustee's Amended Application for Authority to Employ Todd M. Halbert as Special Counsel,* pages 1–2.

6. Halbert alleges that, of the numerous local bankruptcy attorneys he spoke with, only Nathan would accept employment as general counsel (because of the political nature of the parties involved), and then only if he would have no involvement in litigating claims against the Bank, the Former Trustee, and their counsel.

7. In accordance with applicable rules, the application and proposed order to retain Halbert were served upon the United States Trustee and no other parties in interest in the Chapter 7 case. The order appointing Halbert was not personally signed by the Bankruptcy Judge but rather was entered by the Court through the clerk's office which affixed the Bankruptcy Court's signature stamp to the proposed order. The parties sought to vacate the Employment Order upon notice of its entry.

dressed each cause of action for which Vining sought to retain Halbert. The bankruptcy court stated that with respect to the Taunt/Comerica Bank disputes:

"By definition Mr. Halbert could not have gained any knowledge or experience with respect to this potential litigation during his five-month representation of the Debtor in the Chapter 11 proceeding because the potential claims all derived from alleged misconduct which Mr. Taunt and Comerica engaged in post-conversion during the Chapter 7 proceeding." (Opinion, at 26)

The bankruptcy court acknowledged that while Halbert had spent an enormous amount of time post-conversion asserting that Taunt and Comerica conducted themselves improperly during the Chapter 7 case "it is unclear as to how much of that time was actually spent investigating the alleged misconduct and how much has been spent merely accusing Mr. Taunt and Comerica of misconduct." (Opinion, at 26). The bankruptcy court further found that it did not appear that the claims were so complex as to make Halbert indispensable or that it would be so cost prohibitive to retain other counsel as to warrant Halbert's retention. (Opinion, at 25, 27, 29, 30, 31).

The court determined that even if this were true, it is not a sufficient reason to permit employment as Trustee's special counsel. (Opinion, at 30). Finally, the bankruptcy court found that even if Halbert could otherwise meet all other standards for appointment under 11 U.S.C. § 327(e), his appointment would "not be in the best interest of the estate." (Opinion, at 25). Consequently, on July 9, 2002, the bankruptcy court entered its Order Setting Aside Order Authorizing Trustee's Employment of Todd M. Halbert as Special Counsel (the "Order Vacating Employment Order").

Vining and Halbert then filed a Motion for Reconsideration. On August 13, 2002, the bankruptcy court entered its Memorandum and Order Denying the Motion for Reconsideration (the "August 14, 2002 Order").

## II.

*Jurisdiction under 28 U.S.C. § 158(a)*

■ The Appellees assert that this court lacks jurisdiction to hear an appeal from a bankruptcy court order disqualifying an attorney. While there is no controlling authority directly on point, *In re PHM Credit Corp.*, 99 B.R. 762 (E.D.Mich. 1989), provides some guidance on the issue.

There, after careful consideration of an appeal from a bankruptcy court order, Judge Feikens: (1) found that neither § 158(a)(1) or (2) applied to appeals from motions for attorney disqualification; and (2) declined to exercise his discretion to grant leave to appeal the motion for attorney disqualification under § 158(a)(3). *Id.*

Judge Feikens, after thoroughly reviewing the case law, determined that appeals from motions for attorney disqualifications are not final orders within the meaning of § 158(a)(1).[8] *See* 99 B.R. 762, 764 ("Sever-

---

**8.** The court also examined the collateral order exception before concluding that it was likewise inapplicable. *In re PHM Credit Corp.*, 99 B.R. 762, 767 ("[W]ithin the collateral order exception to the finality doctrine ... [u]nder *Cohen v. Beneficial Industrial Loan Corporation[*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)] [a]n order will be treated as final if it: (1) finally determines rights collateral to and separable from the main proceeding; (2) presents a serious and unsettled question; and (3) is effectively unreviewable on appeal from final judgment such that denial of immediate review will harm the appellant irreparably. *In re Wieboldt Stores, Inc.*, 68 B.R. 578, 580 *citing In re Huff*, 61 B.R. 678, 681

al cases have held that in bankruptcy, as in most civil actions, denial of attorney disqualification motions are interlocutory, not final, orders."); *see also In re Delta Services Industries*, 782 F.2d 1267, 1272 (5th Cir.1986); *In re Continental Investment Corp.*, 637 F.2d 1, 3 (1st Cir.1980); *In re Casco Bay Lines*, 14 B.R. 846, 847 (1st Cir. BAP 1981). There is no reason to give greater appealability to orders denying motions to disqualify counsel in bankruptcy cases than to those in ordinary civil cases. *In re Delta Services Industries*, 782 F.2d at 1272.

Although this area of law does not appear to have been addressed by the Sixth Circuit, there is no case law subsequent to *In re PHM Credit Corp* that contradicts its reasoning. Therefore, after applying its thorough and helpful analysis of § 158(a)(1), this court holds that the instant appeal from the disqualification order is not subject to review under that subsection.

■ Of the remaining subsections, only 158(a)(3) provides a relevant question of law.[9] Here again, *In re PHM Credit Corp* is instructive. There, it was stated that "[b]ecause § 158(a) contains no criteria to guide the exercise of this discretion, district courts have looked to circuit court standards governing interlocutory appeals in 28 U.S.C. § 1292(b)." 99 B.R. at 767 (citations omitted).

In applying § 1292(b), the United States Court of Appeals for the Sixth Circuit has required that four elements be met:

(1) The question involved must be one of "law";

(2) It must be controlling;

(3) There must be substantial ground for "difference of opinion" about it; and

(4) An immediate appeal must materially advance the ultimate termination of the litigation.

*Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 446 (6th Cir.1974).

After application of § 1292(b), Judge Feikens found that the appellee had failed to meet two of the four requirements and, therefore, declined to exercise jurisdiction over the appeal. *See* 99 B.R. at 768 ("The Trustee has not met two of these requirements. The Trustee concedes that this appeal would not materially advance the suit's ultimate termination.... Neither does this appeal present a controlling question of law.").

■ In the present case, as in *In re PHM Credit Corp.*, there is no doubt that the Appellants satisfy the first and third elements. Whether an attorney disqualification can meet the second element, i.e., whether it can be "controlling," is less clear.[10] At least one interpretation of "controlling" would permit this attorney disqualification to be heard.[11] To be con-

---

(N.D.Ill.1986). If there is doubt whether an order is collateral, the matter should be resolved in favor of finding a nonappealable controversy. *In re Casco Bay Lines, Inc.*, supra, 14 B.R. at 847 *citing In re Continental Investment Corp., supra,* 637 F.2d at 4; *In re Lloyd, Carr and Co.*, 614 F.2d 17, 19–20 (1st Cir.1980)").

9. Section 158(a)(2) is inapplicable.

10. *See Id.* ("The United States District Court for the Ninth Circuit has held that an erroneous recusal order is not controlling because it

would not materially affect the outcome of litigation ... The term 'controlling' has also been described as one whose incorrect disposition amounts to reversible error on appeal." (citations omitted)).

11. *See Id.* ("[O]ne treatise notes that 'a growing number of decisions has accepted the rule that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants.' ") *Id. (quoting* 16 C. Wright, A. Miller and E. Cooper, *Federal Practice and*

trolling under this definition the appeal need only "save time for the district court, and time and expense for the litigants." 16 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure,* § 3930 at 159–160 (1977).

It is reasonable to conclude that the present issue will be brought back to this same court at the point that it would otherwise become appealable. Therefore, there is nothing in the record to establish that addressing the issue now will not save time for the court, as well as the litigants. To that extent, the time element of "controlling" is satisfied.

In at least one important regard, the instant appeal is distinguishable from the one analyzed *In re PHM Credit Corp.* There, *the failure to disqualify* counsel was being appealed from and, therefore, it was found that allowing the disqualification "would not save time and expense." *Id.* In fact, it was found that "substitution of attorneys would cost the estate from one-half to one million dollars in legal fees and require at least ninety days to educate the new attorneys." *Id.*

In the present situation, where a *successful disqualification* is being appealed, Judge Feikens's reasoning would apply with equal force—only in the opposite direction. Without passing judgment on the efficacy of his efforts, it is evident that Halbert has accumulated experience during the course of this litigation and has familiarity with the facts underlying the post-conversion disputes. It is reasonable to conclude, based on the foregoing, that substituting counsel at this point would, at a minimum, lead to the expenditure of additional, redundant legal fees owing to the time needed to educate a new attorney. It follows that the present attorney dis-

qualification could satisfy both the time and financial aspects of "controlling."

The fourth element, that which requires hearing this appeal now would "materially advance the ultimate termination of the litigation," must still be satisfied. *In re PHM Credit Corp.,* presented a scenario wherein "the Trustee concede[d] that this appeal would not materially advance the suit's ultimate termination." Here, Vining is silent on the issue.

This case is, as evidenced by a prior appeal concerning allegations of fraud upon the court, a breeding ground for complex litigation matters. *See Halbert v. Taunt (In re M.T.G., Inc.),* 291 B.R. 694 (E.D.Mich.2003). The nature of the accusations—flying in both directions—can lead to conflicting conclusions about the impact of the disqualification order, or the reversing of that order. Removing Halbert may advance the suit's ultimate termination of the Bankruptcy. But forcing Vining to substitute his present representation with that of another advocate does not necessarily mean that it would *materially* advance the suit's ultimate termination. In the face of such uncertainty the most prudent course may be to leave the status quo undisturbed.

Further complicating this matter are allegations that no other local counsel would be willing to pursue certain claims (e.g., the fraud upon the court claim). Moreover, because of the nature of the previous appeal involving these parties—including very serious allegations of fraud upon the court—the Appellee's current motion to disqualify merits some skepticism. For all of these reasons, this court does exercise its discretion to hear the appeal and will address the substance of the appeal.[12]

*Procedure,* § 3930 at 159–160 (1977) (footnote omitted)).

12. The Appellants have contended that Halbert lacks standing to bring this appeal. While the Appellant's contention that Halbert

## III.

### *The Standard of Review*

The bankruptcy court's factual findings will not be set aside unless clearly erroneous, and its conclusions of law are reviewed de novo. *Rembert v. AT & T Universal Card Services Inc. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir.), *cert. denied*, 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998); *In re Laguna Assocs. Ltd. Partnership*, 30 F.3d 734, 737 (6th Cir.1994). Review of the bankruptcy court's retention order is limited to abuse of discretion. *See In re Federated Department Stores, Inc.*, 44 F.3d 1310, 1315 (6th Cir.1995) (citations omitted). A court abuses its discretion when (1) the court bases its decision on an erroneous conclusion of law, (2) the court's findings are clearly erroneous, or (3) the court's decision is unreasonable, arbitrary or fanciful. *See Beil v. Lakewood Engineering*, 15 F.3d 546, 551 (6th Cir.1994). If, however, the retention order involves interpretations of law, "this court applies a plenary review of the bankruptcy court's conclusion of law, using a de novo standard." *In re Eagle–Picher Industries, Inc.*, 999 F.2d 969, 972 (6th Cir.1993); *In re Zick*, 931 F.2d 1124, 1126 (6th Cir.1991).

### *Clearly Erroneous*

The Appellees correctly point out that Halbert and Vining have not identified

anything clearly erroneous about any of the factual determinations the bankruptcy court made in reaching his decision. However, Judge Hughes stated that:

"I also take notice that no litigation is ... pending with respect to ... the Taunt/Comerica post-conversion conduct disputes ... Therefore, I conclude that Halbert may not represent the estate under Section 327(e) with respect to the Comerica/Taunt post-conversion [issues] ..." (Opinion, at 35).

Based on the assumption that these sentences are in reference to the fraud upon the court claim, recently addressed by this court in a Memorandum Order an Opinion, this factual finding is clearly erroneous.[13] Therefore, Judge Hughes factual findings, at least to the extent that they address subsections 6(d) [14] and (i) [15] of the *Trustee's Amended Application for Authority to Employ Todd M. Halbert as Special Counsel*, are clearly erroneous.

### *The Employment Order*

Judge Hughes further stated that:

"I have also read ... Section 327(a) and 327(e), and frankly, based upon my own judgment, I was able to discern the answers to the issues presented in this case without having to defer to case law. There may be cases which have given Section 327(e) a different interpretation than that which I have just given to it.

---

lacks standing may be true, there is no standing issue for this appeal because it was brought by Halbert *and* Vining—the latter being the trustee. Trustees have standing to bring appeals concerning attorney disqualification.

**13.** The bankruptcy court's Fraud on the Court Order—dated from 1999—was previously addressed by this court in *Halbert v. Taunt (In re M.T.G., Inc.)*, 291 B.R. 694 (E.D.Mich.2003).

**14.** *See Trustee's Amended Application for Authority to Employ Todd M. Halbert as Special*

*Counsel*, pages 1–2, 6(d) ("Mr. Halbert's Consolidated Motion to Vacate 4/19/96, 4/30/96, and 8/29/96 Orders Because of Fraud on the Court and the Court's related Order Denying Consolidated Motion to Vacate 4/19/96, 4/30/96 and 8/29/96 Orders.").

**15.** *See Trustee's Amended Application for Authority to Employ Todd M. Halbert as Special Counsel*, pages 1–2, 6(i) ("All appeals relating to the foregoing.").

Frankly, I don't know. However ... I am not aware of any case law issued by either [the Sixth Circuit or United States Supreme Court] which is on point." (Opinion, at 33–34).

This is a relatively accurate description of Sixth Circuit case law on § 327(e). There is, however, at least one published bankruptcy case, *In re Dev. Corp. of Plymouth, Inc.*, where the court denied a motion to disqualify trustee's special counsel. 283 B.R. 464 (Bankr.E.D.Mich.2002).

There, the court's analysis of 327(a), (c) and (e) resulted in a reading of the subsections that merely requires that "where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself." *Id.* (quoting *Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir.1993)). In fact, the situation described as necessitating continuous representation is now before this court.[16]

Appellants argue that the bankruptcy court erred, as a legal matter, in *adding* to § 327(e) a requirement, not found in the statute, that the proposed attorney for the trustee previously represented the debtor with respect to those specified special purposes for which the trustee presently proposes to retain Halbert. This court agrees. Such a requirement may be reasonable, but it is not necessary.[17] The court should refrain from reading additional requirements into the statute. *See Cline v. General Dynamics Land Systems, Inc.*, 296 F.3d 466, 469 (6th Cir.2002) ("[T]he primary rule of statutory construction is to ascertain and give effect to the legislative intent."); *Hedgepeth v. Tenn.*, 215 F.3d 608, 616 (6th Cir.2000).

Accordingly, this court holds that § 327(e) only requires that the attorney not be in conflict (i.e., not hold an interest adverse to the estate)[18] with the trustee for the specific purpose that the special counsel designation applies.[19]

---

**16.** *See Id.* (Subsection 327(e) "will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation." quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 328 (1977), *reprinted in* 1977 U.S.Code Cong. & Admin. News 5963.).

**17.** Several courts examining 327(e) have failed to read the additional requirement into it. *See e.g., Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 622 (2d Cir.1999) ("By its terms, section 327(e) applies only where the attorney represented the debtor."); *In re NWFX, Inc.*, 267 B.R. 118 (Bankr.W.D.Ark.2001) (Section 327(e) expressly requires that the attorney must have previously represented the debtor.); *In re Abrass*, 250 B.R. 432, 435 (Bankr.M.D.Fla. 2000) ("A trustee is free to employ multiple general counsels for general representation or for limited purposes, as long as each attorney meets the requirements of Section 327(a). However, only attorneys who formerly repre-

sented the debtor qualify for special treatment under Section 327(e)."); *Meespierson, Inc. v. Strategic Telecom, Inc.*, 202 B.R. 845, 850 (D.Del.1996) ("The language of § 327(e) is clear and unequivocal, and under a plain reading of that section, the appointed attorney must have previously represented the debtor."); *In re Cockings*, 195 B.R. 735, 736–37 (Bankr.E.D.Ark.1996); *In re Black & White Cab. Co., Inc.*, 175 B.R. 24, 26 (Bankr. E.D.Ark.1994) (Attorney must have previously represented debtor under § 327(e)).

**18.** " 'To hold or represent an interest adverse to the estate' means (1) to hold or assert any economic interest that would tend to reduce the value of the bankruptcy estate or that would give rise to an actual or potential dispute in which the estate is a rival claimant, or (2) to possess a predisposition under circumstances that render such predisposition a bias against the estate." *Id.* (citations omitted).

**19.** *See Id.* (Thus, where the interest of the special counsel and the interest of the estate are identical *with respect to the matter for*

For the foregoing reasons,

IT IS ORDERED that the bankruptcy court's Order Setting Aside Order Authorizing Trustee's Employment of Todd M. Halbert as Special Counsel is REVERSED with respect to Halbert's representation for the purpose of the Fraud on the Court claims, and the remaining portion of that Order is REMANDED to the bankruptcy court for procedures consistent with this OPINION.

IT IS SO ORDERED.

*which special counsel is retained,* there is no conflict and the representation can stand. *See, e.g., In re National Trade Corp.,* 28 B.R. 872, 875 (Bankr.N.D.Ill.1983) (denying motion to disqualify special counsel under § 327(c) because interest of the firm as special counsel was identical to interest of the estate); *In re RPC Corp.,* 114 B.R. 116 (M.D.N.C.1990) (approving retention because " 'the interests of the estate and the firm's clients are identical with respect to the firm's duties as special counsel' ") (citation omitted). Accordingly, in this case we must ask whether—*with respect to the special representation it has been hired to undertake*—[the attorney] (1) holds or represents an interest that is adverse to the estate, and (2) is a "disinterested person." (quoting *AroChem,* 176 F.3d at 622.))